ALBANY,
Feb. 1810.

HARRIS
v.
EAGLE FIRE
COMPANY.

———◆———

HARRIS *against* THE EAGLE FIRE COMPANY OF NEW-YORK.

In an action on a policy of insurance against fire, made on merchandise and utensils in a tobacco manufactory, among which were 380 kegs of manufactured tobacco, stated on the back of the policy " as worth 9,600 dollars," 157 kegs of which were destroyed by fire ; it was held, that the insured was entitled to recover for the loss of the 157 kegs according to the valuation of the whole number of kegs, and not the cost of the tobacco at the manufactory, or prime cost. Where there is an absolute loss of any article distinctly valued in the policy, the loss is to be estimated according to the valuation, it being in the nature of liquidated damages.

THIS was an action of covenant, on a policy of insurance against *fire*. At the trial of the cause, a verdict was taken for the plaintiff, by consent, for 1,235 dollars and 10 cents, subject to the opinion of the court on a case, containing the following facts :

The plaintiff resided in *Richmond*, in *Virginia*, where he manufactured tobacco, in a particular manner ; and procured a policy of insurance to be made by the defendants against fire, upon manufactured and unmanufactured tobacco, utensils and other property, to the amount of 20,000 dollars, and which was thus described in the policy.

" Ten thousand dollars upon his (the plaintiff's) merchandise and utensils specified on the back hereof, and contained in his two story frame building, occupied by the assured, for a tobacco manufactory, the said building being marked No. 1. on a plan filed with the surveyor's reports, No. 800.

" Ten thousand dollars upon his !merchandise and other property, as specified on the back hereof, contained in his one story wooden building adjoining the aforesaid building, and marked on said plan, No. 2."

The memorandum on the back of the policy, and referred to in the policy, specifies among other articles insured, in building No. 1. " 380 kegs of manufactured tobacco, worth 9,600 dollars."

The policy was dated 31st *October*, 1807, and the insurance was to continue for one year from the date.

A fire happened on the 6th *March*, 1808, which consumed a considerable portion of the property insured, and among it 157 kegs of manufactured tobacco. The plaintiff, it was admitted, was entitled to recover for the loss of the property insured, and had been paid by the defendants for all of it, except the 157 kegs of manufactured tobacco : And the point in controversy between the parties was, as to the mode of estimating the loss on those kegs.

The manufactured tobacco was of the same kind as that which the plaintiff had sold, for several years previous to the fire, and of the same quality as the 380 kegs specified on the back of the policy, as worth 9,600 dollars ; and which were estimated under their average value, in

reference to the price, at which they would have sold to a *bona fide* purchaser, out of the manufactory; but it was the practice of the plaintiff and his agents, (without any warranty for that purpose,) to take back any of the article sold to a purchaser, which proved to be injured in manufacturing, and to return the price, or give other tobacco; and kegs of such tobacco had been sometimes returned in consequence.

The plaintiff claimed to be compensated for the 157 kegs of manufactured tobacco, at the same rate as is specified in the memorandum on the back of the policy, to be the worth of the whole 380 kegs, the 157 kegs being of the same kind and quality.

The defendants insisted that the plaintiff would be indemnified, if he received the first cost of the tobacco, together with the cost of manufacturing it, and a reasonable allowance for his attention, and the use and risk of the capital employed. It was admitted, that if such a mode of calculation was adopted, 12 1-2 per cent. on the amount, would be such reasonable allowance; and that according to that mode of calculation, the plaintiff had been fully paid. It was agreed, that if the court should be of opinion that the loss was to be estimated in the mode insisted on by the plaintiff, the verdict was to stand, otherwise, the verdict was to be set aside, and judgment entered for the defendants; and that any mistake in the sum for which the verdict was taken, should be rectified.

*Boyd*, for the defendants. The object of the defendants is to have some settled rule for estimating the amount of loss, in cases of this kind. The case of *Lewis* v. *Rucker*,* is not applicable. Here is a gross valuation of a number of casks differing in size and value.

This is strictly a contract of indemnity. Profit or gain cannot enter into the object of such a contract. How is the party who suffers a loss by fire, to be indemnified? By

* 2 Burr. 1167.

being placed in the same situation, as if the accident had not happened. Here the plaintiff has been paid for the raw materials, and all the expense of manufacturing it, and for his trouble and attention. What he now demands further, is the profit arising on the sale of the manufactured article ; and as he is the manufacturer, the price may be fixed at his pleasure. But I understand it to be the established rule in *England*, in settling losses of this kind, to estimate them according to the original or prime cost.

*T. A. Emmet*, contra. Without any precedent, or rule of practice in *Europe* to guide, as to the mode of adjusting the amount of the loss in the present case, it must be fixed on principle. The plaintiff manufactures this article for sale, and affixes a value or price which is uniform, not fluctuating or depending on the state of the market. By the endorsement on the policy, the 380 kegs are valued at 9,600 dollars. Now is not this a valued policy ? If so, there must be an end to all controversy. But suppose, for the sake of argument, and in order to establish a general rule, that it is an open policy. Why should the plaintiff, the manufacturer, stand on a different ground from that of the purchaser who should insure the same article. The first price or value, is that at which the plaintiff sells it, and if it had been insured by the purchaser, he would, in case of loss, have recovered the price paid.

It is true that this is a contract of indemnity, and the plaintiff is to be placed in the same situation in which he stood before the accident which occasioned the loss. He is to receive the price of the article at that time. If goods are shipped to a foreign country, they are invoiced at the market price, at the time of exportation and insurance, and this price is to be paid by the insurer, in case of loss. It is true, that the insured is not to be indemnified for the profit which might have been gained

in a foreign market, had the goods arrived in safety; but the insurer is liable for the price of them, at the time they were shipped. So, in the present case, the price of the article was precisely what the plaintiff demanded of the defendants, and at which they would have sold.

*Hoffman*, in reply, observed, that insurers against fire were more exposed to fraud, than marine insurers; and courts ought, therefore, to be more careful to protect them against it. Where the purchaser insures, he is indemnified when he is paid the cost of the article; and the manufacturer is also indemnified, if he is paid all that the manufactured article has cost him; for it may be that he cannot sell it, at the price he has fixed, or for more than it has actually cost him for the raw material, and the expense of manufacturing. If the profit he puts on his manufacture, is always to be recovered, in case of loss, a temptation to fraud will be offered, since he will be certain of a purchaser, in the insurer, if the property is destroyed.

This action is brought to ascertain the amount of a partial loss. The sum endorsed on the policy as the supposed value, is not to be regarded. Some sum was necessary to be fixed in order to ascertain the premium.

THOMPSON, J. delivered the opinion of the court. The rule by which the loss is to be calculated, is the only question arising in this case. The loss was a total destruction of 157 kegs of manufactured tobacco; and the assured claims the price for which they would have sold at his manufactory to a *bona fide* purchaser; being, as he contends, the valuation in the policy. The underwriters contend, that they ought only to pay the first cost of the tobacco, together with the cost of manufacturing the same, and a reasonable allowance for the use and risk of the capital of the manufacturer, and for his attention. Which of these rules ought to govern, must,

it appears to me, depend upon the question, whether this is to be deemed an open or valued policy. We find in the books but few cases in which the subject of insurance against loss by fire, has come under consideration; and none which throw any light on the present question. The rules applicable to marine insurance, so far as the analogy between the two cases will hold, ought to govern us. And according to those rules, this must, I think, be considered a valued policy, so far as relates to the kegs of tobacco. The case states, that among the articles insured, there were 380 kegs manufactured tobacco, worth 9,600 dollars; this was the rate at which the tobacco was estimated, in making up the 20,000 dollars, the amount of the insurance. The premium was paid according to this valuation; and the 157 kegs which were lost, are expressly stated, *to be of the same kind and quality*, as the whole 380 kegs. We have, therefore, an infallible rule by which to estimate the several and distinct value of each keg of tobacco. But it was said on the argument, that admitting this to be a valued policy, it would make no difference, for it was only in case of a total loss, that there was any distinction between an open and a valued policy; that in case of a partial loss, the like inquiry into the true amount of such loss is to be made, whether the policy be of the one sort or the other. This is undoubtedly true, when ascertaining the extent of damage which the particular subject has sustained, and when there was not an absolute destruction of the subject. But where there is an actual total loss of any article, distinctly valued in the policy, that valuation, I apprehend, must govern in all cases. The valuation in a policy, is in the nature of liquidated damages, to save the necessity of proving them. In case of a total loss of the subject, by allowing the value to be inserted in the policy, the underwriter agrees that it shall be taken as there stated. This valuation is always considered as the fair amount of the prime cost, or at least

that which the parties have agreed to adopt as such. (1 *Marsh.* 199.) If in the valuation of an article manufactured by the assured, he has chosen to estimate his labour and supposed profits, and to pay a premium therefor, I see no objection against it. It furnishes no evidence of a fraudulent intention to overvalue.

In *France*, where almost all policies are valued, if the goods be of the growth or manufacture of the assured, the *current price* is always adopted as the value. (2 *Marsh.* 533.) The effect of a *valuation* is only fixing conclusively the *prime cost;* if it be an open policy, the prime cost must be proved; if a valued policy, it is agreed. (2 *Burr.* 1171.)

In the case of *Lewis* v. *Rucker*, (2 *Burr.* 1167.) Lord *Mansfield*, throughout, speaks of the prime cost and valuation, as meaning the same thing. In speaking of the general nature of the contract of insurance, he says, " The insurer engages, so far as the *prime cost* or *value in the policy*, that the thing shall come safe. If the goods be *totally* lost, he must pay the prime cost, that is, the value of the thing he insured at the outset. If *part* of the cargo, *capable* of a several and distinct valuation, at the outset, be *totally* lost, as if there be *one hundred* hogsheads of sugar, and *ten* happen to be lost, the insurer must pay the prime cost (or valuation) of those ten hogsheads. But where an entire individual, as one hogshead, happens to be spoiled, no measure can be taken from the prime cost, to ascertain the quantity of such damage."

To apply those rules to the case before us. The parties have agreed, in order to save the necessity of particular proof in case of loss, that the valuation in the policy, shall be considered the prime cost of the tobacco. That is, that the prime cost of 380 kegs of tobacco, shall be estimated at 9,600 dollars ; each keg is, therefore, capable of a several and distinct valuation. There has been a total loss of 157 kegs of this tobacco, and

according to Lord *Mansfield's* doctrine, the underwriters must pay the prime cost, or valuation, of the 157 kegs. Had the 380 kegs been totally destroyed, would there have been any doubt, but that the defendants must have paid the 9,600 dollars? I see no reason why a different rule should prevail where there has been a total loss of any number of the kegs, each one being of equal weight and quality. There is much greater certainty and simplicity in this mode of calculation, than to go into an inquiry as to the value of the raw material, and the expense of manufacturing it. There is no pretence that there has been any fraud, or over valuation.

We are, therefore, of opinion, that the plaintiff is entitled to judgment for the amount of the verdict.

Judgment for the plaintiff.