EDWARD MICHAEL, as Executor of JOHN MICHAEL, Deceased, Respondent, *v.* PRUSSIAN NATIONAL INSURANCE COMPANY, Appellant.

1. INSURANCE — RESOLUTION OF DOUBT AGAINST INSURER. Doubt or ambiguity in the terms of a policy of insurance which have no accepted significance should be resolved against the insurer and in favor of the assured.

2. SUBJECT-MATTER OF INSURANCE — INSURANCE ON USE AND OCCUPANCY — CONSTRUCTION. The business use which the property is capable of in its existing condition and indemnity to the owner in the event that it should not continue in the same condition of availability to him, and not the earnings and profits of the business, are insured by a policy on the "use and occupancy" of a grain elevator plant, providing for indemnity at a fixed per diem valuation so long as the owner is prevented from the elevating and other handling of grain by reason of the destruction or damage of the premises by fire.

3. WHEN SOLE AND UNCONDITIONAL OWNERSHIP NOT CHANGED BY POOLING ARRANGEMENT. A change of the sole and unconditional ownership of the use and occupancy of an elevator plant within a policy of insurance conditioned for its avoidance by any such change, is not made by a pooling arrangement with other elevator properties for the promotion of the common interest and the suppression of hostile and unprofitable competition for business, which merely secures the establishment by the executive committee of the association of uniform rates for elevating during the navigation season and the placing of all earnings into a common pool for distribution upon the basis of agreed percentages, the right to percentages under the agreement not to be affected by the incapacity of the elevator by destruction by fire, all earnings on an elevator after the season to belong to it, and the business of the elevator to continue under the direction of its proprietor, who employs his own employees and pays his own operating expenses, taxes and insurance premiums, and makes his own contracts except as to price.

4. WHEN DOCTRINE OF SUBROGATION NOT APPLICABLE. The insurer of the use and occupancy of a grain elevator is not entitled to subrogation to the rights of the insured under a pooling arrangement with other elevator properties, which under all conditions, and notwithstanding that the elevator might be destroyed and the general fund diminished in consequence, entitle it to receive its percentage of the common fund into which the earnings of the elevators are placed.

*Buffalo Elevating Co.* v. *Prussian Nat. Ins. Co.,* 64 App. Div. 182, affirmed.

(Argued March 7, 1902; decided April 18, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 30, 1901, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The action was brought by the Buffalo Elevating Company upon a policy of insurance, issued to it by the defendant, to recover the insurance moneys, by reason of the destruction of its elevator plant by a fire, on August 13th, 1900. The above-named plaintiff has been substituted as such in the place of the Buffalo Elevating Company. The body of the policy is in the standard form, authorized by the laws of New York; the insurance was for the term of one year from the 10th day of March, 1900, and in an amount not exceeding $1,500. Attached to, and made a part of, the policy was a slip, or " rider; " which described the subject-matter of the insurance and declared it to be " on the use and occupancy of their property and elevator building, with boiler and engine houses attached, situate * * * in Buffalo, New York, and known as the Dakota Elevator." The slip, further, provided : " It is a condition of this contract of insurance, that if, by fire during a continuance of this policy, the property, buildings or machinery therein, or either of them, or any part thereof shall be destroyed, or so damaged, as to prevent the elevating and other handling of grain, this company shall be liable at the rate of $4.77 per day for each working day of such prevention, and in case the building or machinery, or any part thereof, are so damaged as to prevent the elevating or handling of the full daily average of grain, this company is to be liable per day for that proportion of $4.77 which the elevating or handling, so prevented, bears to the said daily average ability of said elevator, one year previous to the fire, which, for the purposes of this insurance, shall be considered the average daily ability of the elevator, not exceeding the amount insured. Loss to be computed from the day of the occurrence of any fire to the time when the building could, with ordinary diligence and despatch, be repaired or rebuilt and the machin-

ery placed therein, and not to be limited by the day of expiration named in this policy." Provisions of the policy made it void, if the insured had concealed, or misrepresented, any material fact concerning the subject of insurance; or if the interest of the insured had not been truly stated therein; or if the interest of the insured were other than unconditional and sole ownership; or "if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance, etc."

The defense to the action was rested upon the ground, in substance, that there had been a breach of the express warranties of the contract, in that the interest of the plaintiff was not that of sole and unconditional ownership; inasmuch as, at the time of the issuance of the policy, the ownership of the subject-matter of insurance, to wit: "the use of the elevator Dakota and the earnings thereof," had been transferred to the Western Elevating Association, under certain contracts between that association and the plaintiff, and that any loss of the plaintiff's use and occupancy of said elevator had been made good by payments under the contract with that association; that there had been concealment and misrepresentation of a material fact concerning the subject of insurance by the plaintiff, in the failure to have the policy state the true nature of the plaintiff's interest; and it was, further, claimed by the defendant that it was entitled, by the right of subrogation, to have applied, and to be credited with, upon any liability it may have come under, a *pro rata* share of the moneys paid by the Western Elevating Association to the plaintiff since the fire, which had caused the damage.

The policy was one of forty-six policies, taken out at the time, all effecting a similar insurance, in the same form, and amounting, in the aggregate, to the sum of $73,250. The aggregate daily insurance, thus effected for the period required for the reinstatement, of the destroyed, or damaged property, amounted to $232.93. The fire, which occurred in August, 1900, upon the plaintiff's premises, destroyed the elevator and its contents, and appraisers, who were agreed upon, made an

award in favor of the plaintiff "for 259 working days." The proportionate liability on the defendant's part upon its policy amounted to $1,235.41; while the aggregate liability upon all the policies amounted to $60,328.87. Prior to the issuance of the policies, the Buffalo Elevating Company had entered into a written agreement with a number of other proprietors of elevators to form the Western Elevating Association, to continue for the term of one year, and, during the insurance period of the policy, renewed the agreement for the further term of one year. Under this agreement between the elevators, the Western Elevating Association would collect the receipts and the earnings of the various elevators to a certain amount; which, in the case of the plaintiff, amounted to 80 per cent of its total earnings. The association would make payments, or distributions, from these receipts or earnings to the various members of the association at various intervals, as determined by its executive committee. Each member of the association retained possession of its, or his, elevator; employed and directed its employés and paid its own operating expenses, taxes and insurance premiums. The executive committee fixed the rates of elevation and storage for all the members of the association. The individual members made their own contracts with the railroad companies, shippers and consignees for the shipping and handling of grain for their particular elevators, except as to the price for elevating. It was the course of business that consignments of grain to any elevator, upon arrival, were immediately reported to the secretary and treasurer of the association; who issued warehouse receipts for the grain. When the grain was transferred out of the elevator, such transfer was reported to the same officer and the warehouse receipt was canceled. This course of business, as regulated and controlled by the agreements, obtained during the seasons of navigation. Since the date of the fire the earnings collected and paid over to the plaintiff, or which will be collected and paid over, aggregate $33,698, as the "plaintiff's percentage of the earnings of the elevators forming the Western Elevating Association * * *

for the period since the date of the fire." The above facts were all stipulated and upon them each party moved for the direction of a verdict; which the trial court directed in favor of the plaintiff. The judgment upon the verdict has been unanimously affirmed by the Appellate Division, in the fourth department, and the defendant appeals to this court.

*George Richards* and *Newell B. Woodworth* for appellant. The entire policy is void as the interest of the insured was other than unconditional and sole ownership, change having taken place in the interest, title or possession of the subject of insurance. ( *Wright* v. *Poole,* 1 Ad. & El. 621; *Niblo* v. *N. A. F. Ins. Co.,* 1 Sandf. 551; Joyce on Ins. §§ 900, 1760, 2806; 1 May on Ins. § 79; *Barclay* v. *Cousins,* 2 East, 544; *Abbot* v. *Sober,* 2 Johns. Cas. 39; *Putnam* v. *M. Ins. Co.,* 5 Metc. 391; 1 Phill. on Ins. §§ 327, 346, 495, 1129; *Forbes* v. *Aspinwall,* 13 East, 323; *Constantine* v. *Wake,* 1 Sweeny, 244; *Merrit* v. *Fisher,* 19 Iowa, 357.) Use and occupancy insurance is always taken in the form of a valued policy. (*Mumford* v. *Hallett,* 1 Johns. 433; 1 Arnould on Mar. Ins. § 355; *Fuller* v. *B. Ins. Co.,* 18 Pick. 523.) The subject-matter of use and occupancy insurance is wholly distinct from that of the insurance on buildings or their contents. (2 Joyce on Ins. § 1717; 1 Arnould on Mar. Ins. § 218; 1 May on Ins. § 81.) Valued policies are subject to the warranties and conditions of the contract as truly as are open policies. (L. 1886, ch. 488; *Heller* v. *R. Ins. Co.,* 133 Penn. St. 152.) Valued policies as truly and fully as open policies are governed by the doctrine that a contract of marine or fire insurance is one of indemnity only. (1 Phill. on Ins § 124; 1 Joyce on Ins. § 25; *Cushman* v. *N. Ins. Co.,* 34 Me. 487; *Voisin* v. *C. M. Ins. Co.,* 60 App. Div. 155; *U. Ins. Co.* v. *Weiss,* 106 Penn. St. 20; *Appleman* v. *C. Ins. Co.,* 35 Mo. App. 308.) In every valued policy the law presumes that the entire subject-matter has been made the basis of the valuation. (1 Arnould on Mar. Ins. §§ 345, 346; 2 Phill. on Ins. § 1204; *Forbes* v. *Aspinwall,* 13 East,

323; *Tobin* v. *Harford*, 17 C. B. [N. S.] 528; *A. Ins. Co.* v. *Lamar*, 1 Sandf. Ch. 91; *Voisin* v. *P. W. Ins. Co.*, 51 App. Div. 553.) Plaintiff can recover nothing unless he shows a fulfillment of all the warranties and conditions precedent contained in the policy. (1 May on Ins. [4th ed.] § 156; 3 Joyce on Ins. §§ 1944, 1962; 1 Biddle on Ins. §§ 543, 557; 1 Beach on Ins. § 456; *Ripley* v. *A. Ins. Co.*, 30 N. Y. 136; *Allen* v. *G. A. Ins. Co.*, 123 N. Y. 6; *First Nat. Bank* v. *Ins. Co. of N. A.*, 50 N. Y. 45.) The plaintiff's warranty that it was the sole and unconditional owner of the subject-matter of this insurance was untrue and the policy was thereby avoided. (1 Arnould on Ins. [6th ed.] 65; May on Ins. [4th ed.] § 287; *M. Ins. Co.* v. *Willgus*, 88 Penn. St. 107; *Hough* v. *C. F. Ins. Co.*, 29 Conn. 10; *F. Ins. Co.* v. *Crockett*, 7 Lea, 725; *I. F. Ins. Co.* v. *Dunham*, 117 Penn. St. 460; *Rohrbach* v. *G. F. Ins. Co.*, 62 N. Y. 47; *Weed* v. *L. & L. F. Ins. Co.*, 116 N. Y. 107; *Noyes* v. *H. 'F. Ins. Co.*, 54 N. Y. 668; *P. Ins. Co.* v. *Bowdre*, 67 Miss. 620; *Friedman* v. *Fire Assn.*, 168 Penn. St. 249; *Lowell* v. *M. M. F. Ins. Co.* 8 Cush. 127.) The plaintiff committed a breach of the warranty against a change of interest in the subject of the insurance. (*S. C. O. Co.* v. *P. F. Ins. Assn.*, 78 Hun, 373; 1 May on Ins. § 273; *Walton* v. *A. Ins. Co.*, 116 N. Y. 326; *G. F. Ins. Co.* v. *H. Ins. Co.*, 144 N. Y. 195; *Malley* v. *A. F. & M. Ins. Co.*, 51 Conn. 222; *Card* v. *P. Ins. Co.*, 4 Mo. App. 427; *Biggs* v. *Ins. Co.*, 88 N. C. 141; *Day* v. *P. M. Ins. Co.*, 23 Barb. 623; *Gibb* v. *F. Ins. Co.*, 24 Ins. L. J. 313; *Hamilton* v. *D. H. Ins. Co.*, 23 Ins. L. J. 339; *C. Ins. Co.* v. *Camp*, 64 Tex. 521; *C. F. & M. Ins. Co.* v. *H. S. & L. M. Co.*, 31 Mich. 346.) Under the doctrine of subrogation the insurance companies are entitled to be credited or recouped the amount of $30,000, actually received by plaintiff since the fire from the association. (*Foley* v. *Ins. Co.*, 152 N. Y. 131; *Smith* v. *G. F. Ins. Co.*, 62 N. Y. 85; *C., etc., R. Co.* v. *P. S. C. Co.*, 139 U. S. 88; *M. M. Ins. Co.* v. *Calebs*, 20 N. Y. 176; *Thomas* v. *F. Ins. Co.*, 43 Hun, 218; *Darrel* v. *Tibbits*, L. R. [5 Q. B. D.] 560; 4 Joyce on Ins.

§ 3, 571; *Freemansdorf* v. *W. Ins. Co.*, 9 Bliss [C. C.], 167; *Kernochan* v. *N. Y. B. F. Ins. Co.*, 17 N. Y. 439 ; *C. F. Ins. Co.* v. *E. R. Co.*, 73 N. Y. 399 ; *Dilling* v. *Darneal,* 30 N. Y. S. R. 435.)    Under our standard statutory form of policy the appraisal is in no sense an arbitration. (*Fleming* v. *P. A. Co.*, 75 Hun, 530 ; *Strome* v. *London Assur. Soc.,* 20 App. Div. 572; *Lang* v. *E. F. Ins. Co.*, 12 App. Div. 39.) No question of waiver or estoppel has been or can be presented in this case. (*Eiseman* v. *H. Ins. Co.*, 74 Iowa, 11 ; *Martin* v. *F. Ins. Co.*, 22 Ins. L. J. 259 ; *D. H. Ins. Co.* v. *Johnson,* 47 Kan. 1 ; *Vogel* v. *Ins. Co.*, 9 Gray, 23 ; *Hankins* v. *Ins. Co.*, 70 Wis. 1 ; *MacCormack* v. *Ins. Co.*, 78 Cal. 468 ; *Weed* v. *Ins. Co.*, 7 Lans. 452.)

*Tracy C. Becker* for respondent.    Both parties having moved for the direction of a verdict, the verdict directed by the trial court is conclusive upon this court, not only as to all the facts proved by the plaintiff, but as to all inferences deducible from such facts and necessary to sustain the verdict, as it has been unanimously affirmed below.    Hence it must be presumed that the loss of 259 working days' use and occupation of the elevator and machinery found by the appraisers represented the cash value of an insurable interest belonging to insured at the time of the fire.    (*Thompson* v. *Simpson*, 128 N. Y. 270 ; *Smith* v. *Weston*, 159 N. Y. 194; *Trimble* v. *N. Y. C. & H. R. R. R. Co.*, 162 N. Y. 84; *Walradt* v. *Ins. Co.*, 136 N. Y. 375 ; Wood on Fire Ins. § 62 ; *Janneck* v. *M. L. Ins. Co.*, 162 N. Y. 574 ; *Matthews* v. *A. C. Ins. Co.*, 154 N. Y. 449 ; *Harris* v. *E. Ins. Co.*, 5 Johns. 368 ; *Lewis* v. *Rucker,* 2 Barr. 1167 ; Wood on Fire Ins. § 43 ; *A. Ins. Co.* v. *Lamar,* 1 Sandf. Ch. 91 ; *Sturm* v. *A., etc., Ins. Co.*, 6 J. & S. 281.)    Defendant appellant has no ground for claiming that the insured has violated the covenant in the policy, that the interest of the insured is the unconditional and sole ownership, because the Western Elevating Association never owned even the earnings or any of them, and certainly never owned or controlled the use or occupancy of the Dakota Elevator.

(*Janneck* v. *M. L. Ins. Co.*, 162 N. Y. 574; *Kratzenstein* v. *W. Assur. Co.*, 116 N. Y. 59; *Rickerson* v. *H. F. Ins. Co.*, 149 N. Y. 307; *Allen* v. *St. L. Ins. Co.*, 85 N. Y. 473; *Herrman* v. *M. Ins. Co.*, 81 N. Y. 184; *Matthews* v. *A. C. Ins. Co.*, 154 N. Y. 456; *L. Ins. Co.*, v. *Erb*, 112 Penn. St. 149; *Martin* v. *S. Ins. Co.*, 44 N. J. L. 485; *Riggs* v. *C. M. Ins. Co.*, 125 N. Y. 7; *Foley* v. *M. & B. F. Ins. Co.*, 152 N. Y. 131.) The contention and claim of the defendant, that making the agreement of April 23, 1900, constituted a change in the interest, title or possession of the subject of insurance, and that, therefore, the policy is void is equally untenable, because to work a forfeiture, all, or a substantial part of such interest, must have been transferred, which is not shown here. (*Griffey* v. *N. Y. C. Ins. Co.*, 30 Hun, 99; *Lazarus* v. *C. Ins. Co.*, 5 Pick. 80; *Ellis* v. *Krentzinger*, 27 Mo. 311; *W. F. Ins. Co.* v. *Kelly*, 32 Md. 421; Wood on Ins. 339; *Northam* v. *I. Ins. Co.*, 45 App. Div. 177; *Hitchcock* v. *N. W. Ins. Co.*, 26 N. Y. 68; *Strong* v. *M. Ins. Co.*, 10 Pick. 43, 44; *Stetson* v. *M. M. F. Ins. Co.*, 4 Mass. 330; *Jackson* v. *Silvernail*, 15 Johns. 278; 3 Kent's Com. 261, note a.) The third contention of the defendant, that if the insured was entitled to recover at all, it must give credit for the amount received by it as its percentage of the earnings of the elevating association since the fire, is unsound. (2 May on Ins. 456; Richards on Ins. 175, 176; *Clover* v. *G. Ins. Co.*, 101 N. Y. 277; *Kernochan* v. *B. F. Ins. Co.*, 17 N. Y. 428; *Riggs* v. *C. M. Ins. Co.*, 125 N. Y. 7; *I. T. Co.* v. *Boardman*, 149 Mass., 158; *Smith* v. *G. F. Ins. Co.*, 62 N. Y. 85.)

Gray, J. The contract of insurance is quite exceptional in its nature and the difficulty of the case arises in the construction, which it should receive under the circumstances as disclosed by the evidence. The insurance is neither, specifically, upon the building, nor upon the machinery, which it contains. It is " *on the use and occupancy of the property and elevator building, with boiler and engine houses attached.*" The condition, upon which the liability of the insurer accrues, is the

happening, through a fire, of such destruction, or damage, *" as to prevent the elevating and other handling of grain,"* and the measure of the liability is a fixed per diem valuation, while such a condition of affairs continues. The peculiar feature of the contract is that it contemplates, as its subject-matter, not the mere material loss of the plant, or any part of it, but the loss to the owner of the ability to use it; which, as further matter of distinction, is agreed to be valued, in advance, at a certain sum for each working day of the prevention of the use. Such is the agreement, which controls and which defines what is covered by the policy, and, although the "Standard form" of policy was, necessarily, used, the slip, or special clause, added, and attached, to the statutory form, to the extent that its terms and conditions are inconsistent in material points concerning the contract of insurance, governed, when the contract was executed, and now represents the stipulations of the parties in the matter. So far as consistent, the general conditions of the policy will apply; but, in case of repugnant, or inconsistent statements, that which is more favorable to the assured will control. (See Beach's Law of Ins. sec. 488; Wood's Fire Ins. secs. 62, 64; Richards on Ins. 134.)

The policy is, in fact, a valued one; where the parties intended, and have agreed beforehand, to estimate the value of the subject of the insurance. In such a case, where the *bona fides* of the transaction is not assailed and neither fraud, nor mistake, is charged, the valuation is conclusive upon the parties, as the amount which the assured is entitled to receive upon the happening of the condition of the policy. That is the rule, which is settled upon authority, and, to that extent, it qualifies the principle underlying the contract as one of indemnity. (*Irving* v. *Manning*, 1 H. L. Cases, 287; *Marine Ins. Co.* v. *Hodgson*, 6 Cranch [U. S.] 206; *Sturm* v. *Atlantic Mut. Ins. Co.*, 63 N. Y. 77; Wood's Fire Ins. sec. 41; May on Ins. sec. 31.) Such a policy does not conclude the insurer from showing that the assured had no interest in the subject of insurance, or that it was a wagering policy: it simply

fixes, once and for all, the estimate of the value of the interest of the assured. (*Shawe* v. *Felton*, 2 East, 109.) The defense, in this case, is not rested upon any such ground as that the policy is a wagering contract, or that the assured did not have an insurable interest; but upon the grounds that the plaintiff was not "the sole and unconditional owner of the subject of the insurance" and that there had been a material misrepresentation, or concealment, on the part of the assured, with respect to its interest in the subject of insurance. These allegations are based upon the transactions of the assured with other elevator companies in Buffalo, appearing in certain agreements made before and after the issuance of the policy, and which had for their object, what is commonly known as, a pooling arrangement for the prevention of disastrous, or unprofitable, competition. It is insisted that those agreements constituted breaches of the warranties in the policy, for having effected a change in the title to, or in the possession of, the subject of insurance.

The parties differ as to what was the real subject of insurance. The appellant insists that insurance "on the use and occupancy" of property is similar to insurance on the "freight," which a ship earns. "Freight" signifies the earnings, or profit, to be gained by the ship owner, or hirer, by the carriage of goods, (1 Phill. Ins. sec. 327), and the argument is that the plaintiff's insurance "on use and occupancy" indemnified it against the loss of the earnings, or profits, estimated as derivable from the use of the elevator plant, and that it did not relate to the mere "act of user, or a state of possession." The respondent contends, on the other hand, that the insurance "on use and occupancy" did not relate to the earnings of the elevator property and that the sum fixed in the contract as the loss to the assured, from the suspension of business, was in nowise dependent upon the profits of the business as conducted by it; nor was affected, as a liability, by the fact that the elevator plant was in operation, or was idle, or that the insured lost or gained, from the suspension of the business by the destruction of the elevator.

If the contract was intended as one of indemnity against

the loss of earnings, derivable from the operation of the elevator plant, the words chosen were unfortunate and, in my opinion, too vague. "Use and occupancy," as terms of insurance, may assume, within their general scope, the expectation of profits and earnings derivable from property; but the terms appear to have a broader significance as to the subject of insurance and to apply to the status of the property and to its continued availability to the owner for any purpose he may be able to devote it to. The defendant might have avoided all questions of construction and have made plain the subject of its insurance, if it was the business of the plaintiff, or its earnings and profits, by the use of appropriate and unmistakable words; but such words occur nowhere. The defendant has chosen to make a contract of insurance, which distinguishes its subject as something other than the buildings, or machinery, and which can mean the earnings and profits, only, by resort to reasoning. The terms made use of have not the accepted significance contended for by the appellant, and any doubt, or ambiguity, should be resolved against it and in favor of the assured. (*Janneck* v. *Metrop. Life Ins. Co.*, 162 N. Y. 574; *Matthews* v. *Am. Central Ins. Co.*, 154 ib. 456.) Insurance "on use and occupancy," evidently, relates to the business use, which the property is capable of in its existing condition. If it is destroyed by fire and its use becomes impossible, then, during the period required for its reinstatement as property capable of use and occupation, the owner is to be compensated according to the terms of the policy. The more reasonable meaning of this contract, in my opinion, appears to be that it is a provision for indemnity to the owner of the elevator plant, in the event that it should not continue in the same condition of availability to him, at a valuation agreed upon for every day required to reinstate it. The owner had an interest in its continued status as property capable of being used and occupied, and the defendant received its premium upon the basis of an agreement as to the estimated daily value to the assured of such a status. There is no objection to the contract and there is not, nor

cannot be, any objection to the valuation of the loss occasioned by the destruction of the property. (*Harris* v. *Eagle Fire Co.*, 5 Johns. 368.) What shall be a total loss is defined in the contract of insurance to .be, where the destruction, or damage, is such "as to prevent the elevating and other handling of grain." That was the situation, as it was conclusively found, during a period of 259 working days.

Was then the contract of insurance avoided by any act of the assured, which violated any of its express warranties, as pleaded? If it was, it must have been by the act of entering into the so-called "pooling" arrangement, by agreements with the .other elevator companies. If the effect of that transaction was to change the interest of the assured, and that it ceased, in consequence, to be the "sole and unconditional owner of the subject of insurance," the defense to the enforcement of the policy would be made out. There is no proof of any fraud and no defense is made upon that ground, and the charge of misrepresentation rests upon the failure of the assured to disclose its agreements with the other elevator proprietors. The agreements, which constituted the Buffalo Elevating Association, recited that they were in the interest of rendering "better service to the public" and provided that, during the navigation season, all moneys received for business done by the association of elevators should be collected by the treasurer of the association and, after paying its expenses, should be divided among the elevators in fixed percentages. All earnings of an elevator after the close of the season should belong to it and the destruction by fire, or other accident, incapacitating the elevator, should not deprive its owner ·of the percentage of earnings allotted to it by the agreement. Each member of the association "retained possession of its, or his, elevator and employed, paid and directed its employés, and paid its own operating expenses, taxes and insurance premiums." The "executive committee fixed the rates of elevating and storage;" its authority in that respect, ceasing with the end of the season, on December 1st. "The individual members of the Association made, each, its own con-

tracts with the railroad companies, shippers and consignees for the shipment to, and handling of grain by, the particular elevator, or elevators, owned by such individual members, except as to the price for elevating the same, etc." The course of business, under the agreements, was " that when grain arrived, consigned to any elevator, such consignment was immediately reported to the secretary and treasurer of the Western Elevating Association," who issued the warehouse receipt of the association, and, upon the transfer of the grain out of the elevator, it was reported to the same officer and the warehouse receipt was then canceled.

It is plain, upon the facts, that this association was a method of co-operation, resorted to by elevator properties, to promote the common interest and to suppress a hostile and unprofitable competition for business. It was intended to bring about a harmonious participation in the benefits of the grain elevating business, at the port of Buffalo, by means of placing the earnings in a common pool and of sharing, *pro rata*, in them upon the basis of agreed percentages; established, presumably, with reference to relative productive capacities. The arrangement did not affect the ownership of the elevator, nor transfer any interest in it to the control of others. The business of each elevator was, exclusively, conducted by its proprietor with shippers, or carriers, and all that was, practically, effected was to throw the earnings of each into a common fund, for subsequent distribution upon an agreed scale. The proprietor of each elevator, simply, agreed to a use of the moneys, which he, or it, might earn in the business, in a particular way. If the subject of insurance was the earnings and income of the elevator, then, it was affected by the agreement in question. There was, under that construction, a change effected in their ownership, or in the interest of the assured, and a consequent breach of warranty. If the subject of insurance was not the earnings, nor the income, as the endeavor has been to point out, but the mere continuance of the elevator plant in a state, or condition, of availability for use and occupation, then it mattered not what was

done with the earnings of the business conducted. The conditions of ownership and of interest in the elevator plant were unchanged. The owner had merely agreed to a disposition of the earnings of the elevator business, which secured to him, or to it, a permanent return, for the period of the agreement, of a certain percentage; the consideration for which agreement was in the cessation of competition and in the payment of the allotted percentage, notwithstanding the elevator might be incapacitated through destruction by fire, or by accident occurring to its machinery. That the plaintiff had a real interest to protect, in the pecuniary advantage to it of the continuing ability to use its elevator plant, would seem to be an undeniable proposition. (*Riggs* v. *Commercial Mut. Ins. Co.*, 125 N. Y. 7.) The defendant agreed to insure the interest in the particular form, without limitations, except as to the value which was fixed, and the defense to the right to recover the insurance moneys rests on the making of the "pooling" agreements.

The appellant's claim to be entitled, by application of the equitable doctrine of subrogation, to be credited with a proportionate share of the percentages, or moneys, received by the plaintiff from the association, in reduction of its liability upon the policy, is not a tenable one. This claim, obviously, again, assumes that the subject of insurance was the earnings and income of the elevator plant. It is not that and, therefore, the appellant is not concerned with the arrangement made by the assured with respect to their disposition. The Western Elevating Association might, conceivably, with better appearance of right, prefer the claim to be subrogated as as to the insurance moneys, in order to recoup itself for the moneys paid over to its disabled member; but how the appellant can be heard to claim the application of the doctrine of subrogation, it is difficult to perceive. It has, certainly, not paid the loss, and the loss was not one which was to be made good, as such, by the association. During the season of navigation, percentages were earned in a general fund, created by "pooling" the common earnings, and they were to be paid over, under all conditions and notwithstanding that the eleva-

tor might be destroyed and the general fund diminished in consequence.   I think the principle of the decision of *Foley* v. *Manufacturers' & B. Fire Ins. Co.*, (152 N. Y. 131), relied upon at the Appellate Division as to this point, is applicable. There the policy was upon some dwelling houses, in course of construction, and they were destroyed by fire.   The contractors for their erection were obligated to complete them, before becoming entitled to be paid for the materials and work. It was held that the insurance company was not concerned with the contract relations between the plaintiff and the contractors.   It was said that "it is possible that if the defendant is compelled to pay the policy, the plaintiffs. may, if they insist upon their rights against the contractors, get double compensation, unless they should be adjudged to hold the fund recovered for the contractors.   But, however that may be, the owners had an insurable interest in the whole value of the buildings on their land and the defendant neither can compel the plaintiff to put the loss on the contractors, nor can they resort to the terms of the building contract to diminish the liability for an actual loss within the terms of the policy." Again, it was observed that though the owner "may recoup his losses by reason of a contract liability of a third person, (it) in no way affects the liability of an insurer, in the absence of an exemption in the policy."   The case is very much in point as an authority for the disposition of this appeal.   The theory of the right of subrogation rests upon the fact that the assured has a claim against a third party for the loss which has been sustained in the destruction of the property insured. That is not the case with the plaintiff; who did not receive his payment from the "pooling" fund because, or in consideration, of the loss, but under an arrangement, which had secured to members of the association certain percentages, under all conditions, as a consideration of entering into it.

For the reasons expressed, I advise the affirmance of the judgment, with costs.

PARKER, Ch. J., MARTIN, VANN, CULLEN and WERNER, JJ., concur: O'BRIEN, J., absent.

Judgment affirmed.