O'BRIEN v. NORTH RIVER INS. CO. OF CITY OF NEW YORK.

(Circuit Court of Appeals, Fourth Circuit.. February 3, 1914.)

No. 1187.

1. INSURANCE (§ 507*) — POLICY — CONSTRUCTION — EXTENT OF LIABILITY — "PROFIT DUE."

Plaintiff, the proprietor of a hotel in a city, contracted to reserve for T. during five consecutive days of a political convention, sleeping accommodations for 400 persons at $3 per day each, and gave an option to increase the reservation to 650 on notice before a specified date. After two payments had been made on the contract, plaintiff obtained from defendant a policy of "$10,000. On profit due the assured by reason of advanced paid-up contract for use of rooms during convention week, beginning June 24, 1912." The policy also provided that if the building should be destroyed so as to prevent fulfillment of the contract for the total number of rooms, the insurer should be liable at the rate of $1,428.57 per day, and, in case of partial damage, the insurer should be liable for that proportion of $1,428.57 which the reduction bears to the per diem amount. At the time the policy was executed the insurer had not seen the contract, and before the convention the hotel was so damaged that it could not be used for the entertainment of guests, and plaintiff was obliged to cancel the contract and return $3,000 advance payments made thereon. *Held*, that the words "profit due" in the policy did not mean the amount plaintiff would have collected from the person making the reservation but for the fire, but was rather the gain or benefit which plaintiff expected to derive by reason of the contract, not only from room rent, but from restaurant patronage and other transactions to be expected from hotel guests, the amount of the policy being regarded as a fixed valuation thereof in case of total loss, and hence under such circumstances plaintiff was entitled to recover the face of the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1283; Dec. Dig. § 507.*]

2. INSURANCE (§ 146*)—POLICY—CONSTRUCTION.

When a policy of insurance is susceptible of more than one construction, that construction is to be adopted which is most favorable to assured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. § 146.*]

3. INSURANCE (§ 495*)—VALUED POLICY—ESTOPPEL.

The principle that insurance is to be regarded as a contract of indemnity is limited by the rule that the parties to the contract may agree on a valuation in advance, not only as to the value of tangible property, but also with reference to expected profits or gains, and, in the absence of fraud, the insurer is estopped to claim that the valuation is excessive, nor will it be made the subject of judicial inquiry.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1270–1272; Dec. Dig. § 495.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. INSURANCE (§ 542*)—PROOF OF LOSS—FORM.

No particular form of proof of loss under a policy is required, so long as the proof is ample to enable the insurer to consider its rights and liabilities.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1340–1346; Dec. Dig. § 542.*]

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action by Frank C. O'Brien against the North River Insurance Company of the City of New York. From a judgment for plaintiff for less than the relief demanded, he brings error. Reversed.

R. Lee Slingluff and German H. H. Emory, both of Baltimore, Md. (Gibson & Smith and Soper & Emory, all of Baltimore, Md., on the brief), for plaintiff in error.

W. Calvin Chesnut, of Baltimore, Md. (Charles Markell, of Baltimore, Md., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. [1] The plaintiff, Frank C. O'Brien, having recovered a judgment in the District Court on a directed verdict for $6,000 and interest on a policy of insurance issued by the defendant, North River Insurance Company, brings the cause to this court by writ of error, claiming that the District Judge should have directed a verdict in his favor for $10,000 and interest. The decision depends on the meaning of the contract of insurance, which is to be sought in the words of the policy, considered in the light of the circumstances under which it was issued.

Great importance was attached by the business men of Baltimore to the meeting of the National Democratic Convention in that city on June 25, 1912, and hotel proprietors in anticipation of the convention made contracts for entertainment, from which they expected considerable profit. On February 9, 1912, Frank C. O'Brien, proprietor of the Eutaw House, made a contract with Oscar C. Turner for the Underwood Marching Club to reserve sleeping accommodations for 400 persons for five consecutive days, beginning June 24th and ending June 28th, at $3 a day for each person—$1,000 to be paid on signing the agreement, $1,000 on March 1st, $1,000 on March 15th, and the remaining $3,000 on the day before occupancy of the rooms. An option was given in these words:

"And it is further agreed—the option to increase the number of persons from four hundred (400) to as many more as desired up to six hundred and fifty (650) persons, is hereby accorded the said Oscar C. Turner, provided application is made for same not later than April 15th, 1912, at the same rate, per person, and length of term, as herein stated, and payment for the increased number to be made—one-half at time of application and the balance before occupancy of rooms."

The option was extended to May 1st, when O'Brien was notified that the additional accommodations would not be taken. After two of the payments had been made, the defendant on March 5th issued

to O'Brien its policy of insurance containing the following, which is the provision involved in this controversy:

"$10,000. On profit due the assured by reason of advanced paid-up contract for use of rooms during convention week, beginning June 24th, 1912. It is a condition of this contract of insurance that if the building shall be destroyed by fire or lightning so as to prevent the assured from fulfilling his contract for the total number of rooms, this company shall be liable at the rate of $1,428.57 per day and in case the building is so damaged that the assured can partially fulfill his contract, this company shall be liable for that portion of $1,428.57 which the reduction bears to the per diem amount.

"This insurance shall reduce in amount at the rate of $1,428.57 per day, after the first day of convention week.

"On property known as the 'Eutaw House,' situate at the northwest corner of Baltimore and Eutaw streets, Baltimore, Maryland, and extending through to Garrett street and to an alley in the rear, and leased for hotel and store purposes.

"It is understood and agreed that the building stands on leased grounds. Subject to revision of rate."

The Eutaw House was so damaged by fire on May 25th that it could not be used for the entertainment of guests, and O'Brien was obliged to cancel his contract with Turner above recited and return $3,000, the amount of advance payments made thereon.

On the trial of the action on the policy the District Judge in charging the jury sustained and stated forcibly the position of the insurance company that the "profit due" the insured was the gross sum to be paid on the contract between O'Brien and Turner; that the gross sum which O'Brien would have collected but for the fire was $6,000, and that therefore the recovery must be limited to that sum; that the defendant could not be held liable under the second clause of the contract for $1,428.57 a day for seven days because that liability was conditioned on the taking of the "total number of rooms," which was held to be 650, of which 250 were not taken.

Analysis of the contract, we think, will clear away the apparent obscurity, and show that this interpretation is not admissible. When the insurance company issued its policy, and up to the time of the fire, it had never seen O'Brien's contract for rooms, and the evidence gives no intimation that it knew anything more definite of its terms than that he had made a contract for a large number of rooms in anticipation of the Democratic Convention. That the insurer in framing the policy did not have in view a certain number of rooms engaged and a certain number under option is shown by the fact that the policy refers to the contract as "advanced paid-up contract for use of rooms," when the only contract in existence was not then, nor at any time, paid up in advance; that it did not have in view making the insurance policy coterminous or coincident with the contract as to time is shown by the fact that the contract for rooms calls for five days' occupancy, while the policy insures for a specific sum for the week, to be paid for each day of seven days; that it did not mean to measure and limit the amount of insurance by the gross amount that the insured was to receive for the rent of rooms is shown by the fact that the insurance is for $10,000, and it was impossible for the insured to receive that amount for room rent under his contract; that it did not have in view any options or contingencies or oth-

er particulars of the contract is shown by the fact that the policy makes no reference to such particulars, and cannot be made to fit into them; that the policy was not meant to cover gross receipts is shown by the fact that the insurance is limited to profit, and it was impossible that the entire gross receipts from rent of hotel rooms should be profit.

It is true that the word "profit" is sometimes used as synonymous with gross receipts, as in insurance policies on a ship's freight charges. But the words "on profit due the assured by reason of advanced paid-up contract for use of rooms" would be very inapt to express insurance on gross receipts; and such a strained meaning must be rejected when, as here, it is incompatible with the general terms of the instrument. The only meaning of these words which will make the contract consistent in its parts is the plainest meaning, namely, the gain or benefit which it was expected the assured would derive "by reason of" the contract, not only from room rent but restaurant patronage and other transactions to be expected from hotel guests; this gain or benefit being valued at $1,428.57 a day for seven days. The condition expressed in the second clause of the insurance contract relied on by the defendant strengthens this conclusion; for evidently it is a stipulation as to the contingency of the degree of damage from fire, and not a contingency as to the number of rooms contracted for; and it means that, if the hotel should be so damaged by fire that all or "the total number of rooms" covered by the contract should, *for that reason,* become unavailable for use, then the loss is valued at $1,428.57 for each day of the week, amounting in the whole to $10,000, and that the valuation of the loss should be reduced in proportion if the contract for rooms should not be entirely defeated by fire, but a part of the rooms covered by the contract should become unavailable on account of fire.

Comparison of the policy and the contract in the light of the correspondence and other circumstances indicates that the insurer did not take the pains to ascertain precisely what contract the insured had. But, however vague the insurance company's knowledge of the contract may have been, there is no vagueness or uncertainty in the valuation fixed, for it plainly agreed to value the profit on the contract, whatever it might be, at $1,428.57 a day for seven days, aggregating $10,000.

[2] This conclusion is fortified by the rule that when a policy of insurance is susceptible of more than one construction, that is to be taken which is most favorable to the assured. Liverpool, etc., Ins. Co. v. Kearney, 180 U. S. 132, 21 Sup. Ct. 326, 45 L. Ed. 460. The adoption of the defendant's construction would not only violate this rule, but require that the court reconstruct the policy issued into that which the defendant might have preferred to issue if it had informed itself as to the precise terms of the contract to which the insurance related.

[3] The general principle that insurance is to be regarded a contract of indemnity is limited by the rule that the parties to the contract may agree on a valuation in advance, not only in the insurance

of tangible property, but of expected profits or gains, and that in the absence of fraud this valuation is controlling, and is not subject to judicial inquiry. When the parties fix the value the insurer cannot be heard to say it was excessive. Barclay v. Cousins, 2 East, 552; Marine Ins. Co. v. Hodgson, 10 U. S. (6 Cranch) 206, 3 L. Ed. 200; Ins. Co. of Virginia v. Mordecai, 63 U. S. (22 How.) 111, 16 L. Ed. 329; Alsop v. Commercial Ins. Co., 1 Sumn. 451, Fed. Cas. No. 262; The Main, 70 L. J. 247, 13 Eng. Ruling Cases, 681; Canada, etc., Co. v. Insurance Co. of North America, 175 U. S. 609, 20 Sup. Ct. 239, 44 L. Ed. 292. The cases of Cushman v. Northwestern Ins. Co., 34 Me. 487, and Michael v. Prussian Natl. Ins. Co., 171 N. Y. 25, 63 N. E. 810, in their facts and in the principles involved are similar to this case, and in them the insurer was held liable for the full valuation.

The defendant strongly relies on cases like Forbes v. Aspinall, 13 Eng. Ruling Cases, 673, 13 East, 323, to bring this case within the rule which the court thus states in "The Main," supra, as laid down in Forbes v. Aspinall:

"But that case is only an authority for a very well-known proposition, viz., that where both parties contemplate the freight insured to be on a full and complete cargo, and when, in fact, part cargo only is shipped, the freight on the part cargo is all that is at risk, so that there must be what is called an opening of the valuation. In strictness it is not an opening of the valuation, but is merely a reduction in proportion to the amount of cargo shipped; the valuation being held binding as a valuation on that portion which is shipped."

The present case does not fall under this rule, for here the insurance was on the profit derivable from a contract for use of hotel rooms which the insurer agreed to be of the value of $10,000. As we have seen, the insurer in agreeing to this valuation of the profits could not have had in mind nor issued its policy with respect to any options or contingencies expressed in the contract for use of rooms which might increase or reduce the profit, for it had no knowledge of such particulars of the contract.

No attention has been paid to the usual printed clauses pretending to limit liability to the actual value of the property lost, for the case is controlled by the special contract which was written and pasted on a standard policy.

[4] The position that there was a forfeiture for a lack of adequate proof of loss is untenable. Without going into detail it is enough to say that no particular form of proof of loss is required, that the proof was ample to enable the insurer to consider its rights and liabilities, and that the demand of the insurer as to the form of the proof embraced the demand that the insured should accept the insurer's construction of the policy.

The jury should have been instructed to find a verdict for the plaintiff for $10,000 and interest.

Reversed.