## JACKSONVILLE OIL MILLS v. STUYVESANT INS. CO. et al.

## SAME v. GLOBE & RUTGERS FIRE INS. CO. et al.

(District Court, W. D. Tennessee, W. D. February 23, 1925.)

Nos. 2901, 2902.

1. Insurance ⊚⟫509—Policy held to entitle insured to $150 per day during period it was deprived of use and occupancy, regardless of profits which might have been made.

Policy insuring against loss of use and occupancy of mill through fire for not exceeding $150 a day during prescribed period *held* a valued policy, entitling insured to $150 per day for such period as it should be deprived of use and occupancy, regardless of possibility of profits which might have been earned.

2. Insurance ⊚⟫146(3)—Ambiguities in policy construed most favorably to insured.

Where terms of policy are ambiguous, or have no accepted meaning, they should be construed most favorably to insured.

3. Insurance ⊚⟫146(1)—Intention of parties controls construction.

Intention of parties controls construction of use and occupancy policy.

Separate suits by the Jacksonville Oil Mills against the Stuyvesant Insurance Company and another and against the Globe & Rutgers Fire Insurance Company and another. Decrees for plaintiff.

W. P. Metcalf, of Memphis, Tenn., for plaintiff.

Hughes & Hughes, of Memphis, Tenn., for defendants.

ROSS, District Judge. Suit was brought by plaintiff in each of the above-styled cases against each defendant on an insurance policy issued by the defendants, respectively, commonly called a "use and occupancy" policy. The suits grew out of the destruction by fire of the same property insured by each of the defendants, and the suits were consolidated and heard together.

Plaintiff is a corporation located at Jacksonville, Tex. Each defendant is a corporation, but neither was suable in the state of Texas, and inasmuch as each was doing business in the state of Tennessee, and represented by agents in this district, suit was brought in this jurisdiction.

[1] Plaintiff was engaged in the business of buying cotton seed, from which it manufactured and sold cotton seed products; the products being cotton seed oil, cotton seed meal, cotton seed hulls, and the lint ginned from the seed, which product is referred to as linters. Each policy insured the plaintiff in the use and occupancy of its property, consisting of houses, machinery necessary to the manufacture of cotton seed products, storage warehouses, etc., for a period beginning with the 1st day of October, 1922, and including the 31st day of March, 1923; that is to say, plaintiff was insured against loss by reason of inability to enjoy the use and occupancy of the property through fire or any of the other causes mentioned in the policies, and the insurance was stated to be at a sum of not more than $150 per working day for such time as plaintiff might be deprived of the use and occupancy of the property within the prescribed period.

A fire occurred on the 16th day of October, 1922, which virtually totally destroyed the main building and the principal portion of plaintiff's property, so as to render it unfit for occupation and use as a manufacturing plant for a period extending considerably beyond March 31, 1923, as shown by the undisputed proof in the case. The particular clauses in the policies in question read as follows:

"Jacksonville Oil Mill.

"Use and occupancy: Oil mills.

"$23,400 on the use and occupancy (including fixed charges) of all of their buildings and machinery used or for use in their business of manufacturing the products of cotton seed and/or peanuts and/or vegetable seeds, situate at and/or near Jacksonville, Texas. Privilege is hereby granted to use gasoline engines, it being understood that gasoline storage and feed to the engine is in accordance with the underwriters' specifications.

"It is a condition of this contract that if the above-described buildings and machinery, or either of them, or any part thereof, shall be destroyed or damaged by fire or lightning, occurring during the term of this policy, so that the assured is entirely prevented from operating, this company shall be liable for not exceeding one hundred fifty dollars ($150.00) for each and every working day of any year between and including October 1st to March 31st from the date of said destruction or damage to the date when, with reasonable diligence, said building or buildings can be repaired or rebuilt, and/or the machinery thereof be repaired or replaced therein, as such property existed before the said destruction or damage. But if, as a result of said destruction or damage, the production capacity of the plant be only diminished, then shall the assured's loss per diem be estimated as that proportion of not exceeding $150 in which the assured's daily capacity is diminished for each and every working day of any year between and including the date above mentioned, from the date of said destruction or damage to the date when, with reasonable diligence, said building or buildings can be repaired or rebuilt and/or the machinery thereof be repaired or replaced therein, as such property existed before the said destruction or damage.

"It is understood that no claim for loss shall be made under this policy because of cessation of operations of the within described premises between the dates of April 1st and September 30th for any cause whatsoever.

"It is understood that for the purpose of this insurance, all days are to be considered working days excepting Sundays, and that this company's liability for loss and payment for days between and including the dates above mentioned is not limited by the expiration of this policy, but that this company is liable, in accordance with the conditions and stipulations above, for total or partial loss of use and occupancy for all working days between and including the dates above mentioned, providing said total or partial loss is caused by destruction or

damage by fire or lightning occurring within the term of this policy."

The contention of plaintiff is that it is entitled to recover ratably from the defendants a total amount of $150 per day for each working day from the date of the fire, on October 16, 1922, to the 1st day of April, 1923. The contention of defendant is that, if plaintiff is entitled to recover any amount, it is for only such sum as it can show its reasonable profits would have been for the period intervening between the date of the fire and April 1, 1923, so that the sum should not exceed $150 for each working day; in other words, that plaintiff is entitled to recover only on a profit basis.

In Michael v. Prussian Nat. Ins. Co. (Ct. of Appeals of N. Y., April 18, 1902) 171 N. Y. 25, 63 N. E. 810, plaintiff brought suit on an insurance policy covering its elevator property, which policy contains the following provision:

"It is a condition of this contract of insurance that if, by fire, during a continuance of this policy, the property, buildings, or machinery therein, or either of them, or any part thereof, shall be destroyed, or so damaged as to prevent the elevating and other handling of grain, this company shall be liable at the rate of $4.77 per day for each working day of such prevention; and in case the building or machinery, or any part thereof, are so damaged as to prevent the elevating or handling of the full daily average of grain, this company is to be liable per day for that proportion of $4.77 which the elevating or handling so prevented bears to the said daily average ability of said elevator one year previous to the fire, which, for the purposes of this insurance, shall be considered the average daily ability of the elevator, not exceeding the amount insured. Loss to be computed from the day of the occurrence of any fire to the time when the building could, with ordinary diligence and dispatch, be repaired or rebuilt and the machinery placed therein, and not to be limited by the day of expiration named in this policy."

Defense was made to this policy on different grounds from that urged in the instant case, but in determining the matter the court held that the policy was a "valued" one, and that the total destruction of the property entitled the plaintiff to recover the fixed amount of $4.77 for each working day as to which plaintiff was deprived of the "use and occupancy" of the property. On page 813 of 63 N. E. (171 N. Y. 34) the court said, in considering the contention that the insurance indemnified the insured against the loss of earnings or profits:

"If the contract was intended as one of indemnity against the loss of earnings [or profits] derivable from the operation of the elevator plant, the words chosen were unfortunate, and in my opinion too vague. 'Use and occupancy,' as terms of insurance, may assume, within their general scope, the expectation of profits and earnings derivable from property; but the terms appear to have a broader significance as to the subject of insurance, and to apply to the status of the property, and to its continued availability to the owner for any purpose he may be able to devote it to. The defendant might have avoided all questions of construction, and have made plain the subject of its insurance, if it was the business of the plaintiff, or its earnings and profits, by the use of appropriate and unmistakable words. But such words occur nowhere. The defendant has chosen to make a contract of insurance which distinguishes its subject as something other than the buildings or machinery, and which can mean the earnings and profits only by resort to reasoning. The terms made use of have not the accepted significance contended for by the appellant, and any doubt or ambiguity should be resolved against it and in favor of the assured. Janneck v. Insurance Co., 162 N. Y. 574, 57 N. E. 182; Matthews v. Insurance Co., 154 N. Y. 456, 48 N. E. 751, 39 L. R. A. 433, 61 Am. St. Rep. 627. Insurance 'on use and occupancy' evidently relates to the business use which the property is capable of in its existing condition. If it is destroyed by fire, and its use becomes impossible, then during the period required for its reinstatement as property capable of use and occupation, the owner is to be compensated according to the terms of the policy. The more reasonable meaning of this contract, in my opinion, appears to be that it is a provision for indemnity to the owner of the elevator plant in the event that it should not continue in the same condition of availability to him, at a valuation agreed upon for every day required to reinstate it. The owner had an interest in its continued status as property capable of being used and occupied, and the defendant received its premium upon the basis of an agreement as to the estimated daily value to the assured of such a status."

In Tanenbaum v. Freundlich (Sup. Ct. N. Y. App. Term, Jan. 1903) 39 Misc. Rep. 819, 81 N. Y. S. 292, 115 N. Y. St.

Rep. 292, it was held that, in determining the amount of damages occasioned an insurance broker through loss of commissions resulting from failure of defendant to take out fire insurance "to not less than the market value of the 'use and occupancy' of certain property" as agreed, it was improper to permit testimony showing the net yearly profits made by defendant in his business.

The question seems to be one as to which the authorities are meager as it would appear the policies are unusual. The particular clause in question in each policy is a "rider" to each of the policies in question but for which rider the policies would appear to be New York standard forms. So that the question presented is whether under the peculiar wording of the policies they are to be considered as "valued" policies or contingent policies. I am of opinion they must be construed as "valued" policies.

[2] As held in Michael v. Prussian Nat. Ins. Co., supra, and numerous authorities which could be cited on this question, where ambiguity exists in the terms of an insurance policy, or where the terms have no accepted meaning and are doubtful, they should be construed most favorable to the insured. It appears the principal difference in the Michael Case and the instant case is that in the former the provision of the policy was "this company shall be liable at the rate of $4.77 per day for each working day of such prevention," while in the latter the policies provide that in the event of destruction of the property, "so that the assured is entirely prevented from operating, this company shall be liable for not exceeding $150 for each and every working day. * * *"

[3] In the one instance, the amount is specified at a fixed sum. In the other, it is specified as an amount not exceeding a fixed sum for each working day wherein the assured might be deprived of the use and occupancy of the property within the prescribed period. In construing the policy, the intention of the parties must govern. It would seem that the only fair natural construction to be placed upon the clause in question is that it was the intention that the assured should receive for total destruction, or such destruction as totally deprived the assured of the use and occupancy of the property, the amount of $150 per day for any such period as it should

3 F.(2d)—64

be deprived of such use and occupancy. The statement, "not exceeding $150 for each and every working day," means that plaintiff could not recover a sum the total of which would exceed $150 per day for each working day within the period from October 1, 1922, to April 1, 1923, if by reason of fire or lightning it should have been deprived of the use and occupancy of the property for the entire period, or that it could not recover a sum, the total of which exceeded the amount of $150 per day for each working day for any portion of such prescribed period during which, under the terms of the policy, it might be so deprived of the use and occupancy of the property.

The thing insured was not the possibility of profit or loss, nor profits which might have been earned, but that which was insured by defendants was the right of plaintiff to the use and enjoyment of its property; in other words, it was the privilege which plaintiff desired to have to use its property, the right to endeavor to earn profits. That right or privilege was insured, regardless of whether such right or privilege might or might not have been remunerative. Plaintiff did not obtain insurance against the possibility of its winning or losing in the operation of its property. If such had been its intention, it would doubtless have had the policy so worded as that it would have covered a loss, whether the property had been destroyed or not. An insurance against loss of profits would be a totally different contract from insurance guaranteeing the right to the use and enjoyment of property. Furthermore, the great difficulty of endeavoring to arrive at any reasonable basis whereby possible profits of a business such as that in which plaintiff was engaged might have been estimated for any particular period is manifest. In the policies in question no such uncertainty was contemplated, nor is such possibility embraced within the contracts.

As above stated, the undisputed proof is to the effect that the buildings could not have been replaced within the time limit of the insurance. Such being true, plaintiff is entitled to recover ratably from the defendants, so that the total sum recovered does not exceed an amount computed at $150 per day for the number of working days between October 16, 1922, and April 1, 1923. Plaintiff is also entitled to interest on this sum from the date of April 3, 1923, this being the day upon which it was agreed payment was finally refused.