TANENBAUM v. FREUNDLICH.

(Supreme Court, Appellate Term. January, 1903.)

1. INSURANCE BROKERS—CONTRACT TO TAKE OUT INSURANCE—CONSTRUCTION.

A contract authorizing an insurance broker to procure "all fire insurance required by the party of the second part, not less than twenty thousand dollars per year, and not less than the market value at any time of the property insured," required the second party to take out through the broker the amount of insurance stipulated, whether he needed it or not.

**2. SAME—BREACH—DAMAGES—CERTAINTY.**

Damages to an insurance broker on account of the loss of commissions, due to defendant's failure to take out fire insurance to not less than the market value of the use and occupancy of certain property, in accordance with his agreement, are not so uncertain and indefinite as to preclude recovery.

**3. SAME—EVIDENCE—ADMISSIBILITY.**

In determining the damages occasioned to an insurance broker through the loss of commissions resulting from the failure of defendant to take out fire insurance to not less than the market value of the "use and occupancy" of certain property, as agreed by him, it was improper to receive testimony as to the net yearly profits made by defendant in his business.

Appeal from City Court of New York, Trial Term.

Action by Moses Tanenbaum against Morris Freundlich. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and CLARKE and GREENBAUM, JJ.

David Steckler, for appellant.

Levi & Halff (Leo N. Levi, of counsel), for respondent.

CLARKE, J. Action by a fire insurance broker to recover damages for breach of contract. The first paragraph of the written contract provides:

"That the said firm of I. Tanenbaum, Son & Co., is hereby authorized to and shall, as the agents of the party of the second part and for his account, procure and pay premiums for all fire insurance required by the party of the second part, not less, however, than twenty thousand dollars per year, and not less than the market value at any time of the property insured, for the period of three years from the sixth day of February 1899 to the sixth day of February 1902, upon merchandise, machinery, furniture and fixtures, use and occupancy, buildings and rents, contained in or on the building and premises known as numbers 43 and 45 West Fourth street, New York City, in any of the companies named on Schedule A annexed to and forming part hereof, or in such other companies as are or may hereafter be admitted to do business in the state of New York."

There is no question on this appeal as to the insurance, under the contract, and in accordance with the terms thereof, having been duly placed upon the merchandise, machinery, furniture, and fixtures in the loft occupied by the defendant, as a manufacturer of furs, in said building. Nor is there any question raised as to "building and rents." Defendant did not apply for or take out any insurance on "use and occupancy." Plaintiff claims a breach of the contract in that regard, and seeks to recover the commissions he would have earned if the "use and occupancy" had been insured upon its market value. Defendant claims he did not require such insurance, and therefore plaintiff has no claim. But the language of the contract is "for all insurance required by the party of the second part, not less, however, than twenty thousand dollars per year, and not less than the market value at any time of the property insured." There can be no doubt that the proper construction of that language is that defendant was required, through plaintiff, to take out insurance at least to the amount

of $20,000, and, if the market value was in excess of said sum, to the amount of said market value.

Insurance on "use and occupancy" is a modern development of insurance, and there are few cases in the books thereon. The Court of Appeals, in Michael v. Prussian Nat. Ins. Co., 171 N. Y. 25, 63 N. E. 810, has defined the legal meaning of the phrase:

"Insurance on 'use and occupancy' evidently relates to the business use which the property is capable of in its existing condition. If it is destroyed by fire, and its use becomes impossible, then, during the period required for its reinstatement as property capable of use and occupation, the owner is to be compensated according to the terms of the policy. * * * It is a provision for indemnity to the owner of the * * * plant in the event that it should not continue in the same condition of availability to him."

It is usual for such policies to be valued; that is, it is agreed what sum shall be paid for every day that the disability continues, and upon such policies there can be no dispute as to amount. But no such policies were taken out in this case. One element of the cause of action is the loss of commissions for failure to take out such policies. As we have seen, defendant was bound to take them out for not less than the market value of said "use and occupancy."

Defendant urges that, this being an executory contract, the damage by its breach in this regard was so indefinite and uncertain that plaintiff may not recover. We do not agree with that contention. The commissions which plaintiff was to receive, based upon the rates at which the insurance could be placed during the life of the contract, were clearly ascertainable. The damage which he suffered was the logical and proximate result of defendant's breach. The only element of uncertainty was as to the market value of the use and occupancy, but in essence this was no more uncertain than the market value of any commodity at any period, or the value of any future executory contract. If this were ascertainable by competent proof, the amount of the damage might then be fixed clearly and definitely. But in ascertaining this market value of the use and occupancy, plaintiff was permitted, over objection and under exception, to prove the net yearly profits made by the defendant in his business. And when the learned court came to submit the difficult questions arising in this case to the jury, he limited the market value of "use and occupancy" to the consideration of the profits and the fixed charges. But the profits of the business were quite another insurable risk, and not at all covered by the phrase "use and occupancy," as distinctly held in Michael v. Prussian Nat. Ins. Co., supra. The precise contention was made in that case that "use and occupancy" was like "freight" earned by a ship; that it was an indemnity against the loss of earnings or profits. But this contention was not sustained. "The terms made use of have not the accepted significance contended for by the appellant, and any doubt or ambiguity should be resolved against it and in favor of the assured. Insurance 'on use and occupancy' evidently relates to the business use which the property is capable of in its existing condition." Id. The difficulty of ascertaining the value of "use and occupancy" is undoubtedly the reason why a per diem allowance is agreed upon between the insurer and the

insured. But this is not an action on such a policy. It is to recover damages for breach of contract to take out such a policy through the broker. It was fatal error to admit evidence as to profits, and to leave to the jury the question whether the profits, plus the fixed charges, "was a fair estimate of the value of the use and occupancy of those premises." The Court of Appeals said: "The owner had an interest in its continued status as property capable of being used and occupied." Perhaps the market value of that interest may be ascertainable by proof in the absence of agreement, but it clearly does not consist of profits plus fixed charges.

Judgment and order reversed, and new trial ordered, with costs to appellant to abide event. All concur.