(40 Misc. Rep. 174.)

### TANENBAUM v. SIMON et al.

(Supreme Court, Appellate Term. March, 1903.)

1. INSURANCE BROKERS—BREACH OF CONTRACT—DAMAGES.

In an action by an insurance broker to recover for loss sustained by failure of defendants to comply with a contract authorizing him to insure their buildings and stock at the market value for a term of years at the rate of $1 a hundred, alleging that they refused to insure the "use and occupancy," plaintiff is entitled to nominal damages where defendants did not insure such use and occupancy.

2. SAME—USE AND OCCUPANCY.

The phrase "use and occupancy," as used in a contract for insurance, does not include profits of the business or salaries of salesmen, but means the business use of which the property is capable.

3. SAME—COUNTERCLAIM.

In an action by an insurance broker for breach of contract to insure, defendants cannot counterclaim the difference in the amount of rebates, between what they would have been on $1 a hundred, the contract rate, and what they were on the lower rate paid by the broker and named in the policies, but his liability ceased when he delivered the policies to the defendant.

Appeal from City Court of New York, Trial Term.

Action by Moses Tanenbaum against Aaron Simon and Julius Herrman. From a judgment dismissing plaintiff's complaint, and directing a verdict for defendants on their counterclaim, plaintiff appeals. Modified.

Argued before FREEDMAN, P. J., and GILDERSLEEVE and GIEGERICH, JJ.

Leo N. Levi (Adolph B. Rosenfield, of counsel), for appellant.
Emanuel S. Cahn, for respondents.

FREEDMAN, P. J. This case was tried in the court below upon an agreed statement of facts. The action is based upon a written contract executed by the parties, which contract, among other things, provides as follows:

"That the said firm of T. Tanenbaum & Co. [plaintiff's assignor] is hereby authorized to and shall, as agents of the parties of the second part and for their account, procure and pay premiums for all fire insurance required by the parties of the second part, not less however than the market value at any time, of the property insured, for the period of time from the 23d day of Dec., 1897, to the first day of Feb., 1901, upon merchandise, machinery, furniture and fixtures, use and occupancy, building and rents, contained in the building and premises known as 688 Broadway, N. Y. City, in any of the companies or underwriters named in Schedule A; annexed to and forming a part hereof, * * * at the uniform rate of one dollar per year for every hundred dollars of insurance procured."

The defendants complied with the conditions of this contract, and obtained insurance, through the plaintiff as agent, upon all the property mentioned as above, except that they failed to take any insurance upon use and occupancy. The plaintiff brought this action for breach of this contract in failing to take out insurance upon "use and occupancy." It is conceded that at all times during the years covered by said contract the plaintiff could have procured such insurance, in the companies named in the contract, at a total cost to the plaintiff of 30 cents per year for every $100 of such insurance; the plaintiff's claim in this action being the difference between the contract price agreed to be paid by the defendants for insurance upon use and occupancy, and the price at which the plaintiff could have obtained it, had the defendants been insured therefor at its market value.

All the policies procured for and delivered to the defendants under and by virtue of the contract aforesaid, contained this clause:

"This policy shall be canceled at any time at the request of the insured, or by the company, by giving five days' notice of such cancellation. If this policy shall be canceled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rates; except that when the policy is canceled by this company by giving notice, it shall retain only the pro rata premium."

Pursuant to this clause, commonly called the "cancellation clause," several of the policies issued to the defendants were canceled. The return or unearned premiums, payable by the several companies whose policies were canceled were paid to the plaintiff for the account of the defendants, and the plaintiff paid the same to the defendants. The companies canceling the policies calculated and computed the

return or unearned premium upon the basis of the total premium named in the policies, and paid the plaintiff said sums.

The defendants claim that, inasmuch as they paid for said policies at the rate called for in their contract with the plaintiff, the return premium for the unexpired term of said policies should be calculated upon the basis of what the defendants actually paid, and not upon the basis charged by the companies. As the sum paid by the defendants to the plaintiff under their contract was in every case a larger sum than the plaintiff paid the companies, the defendants set up a. counterclaim in this action for such excess, which was conceded to be, in the aggregate, the sum of $87.77.

The learned trial judge in the City Court, in construing the terms of the contract between the parties, decided that such contract did not require the defendants to take insurance upon use and occupancy —that it was optional with the defendants whether to procure such insurance or not—and therefore he dismissed the complaint. He also held that the contention of the defendants as to the manner in which the rebates on canceled policies should be calculated was correct, and directed a verdict for the defendants upon their counterclaim for said sum of $87.77.

In the case of Tanenbaum v. Freundlich, 81 N. Y. Supp. 292, decided by the December Appellate Term, the contract between the parties was similar to the one in the case at bar, except that in the Freundlich contract the defendant was obliged to take not less than $20,000 of insurance per year, and not less than the market value at any time of the property insured. In that case the plaintiff brought his action for damages for failure by the defendant to take any insurance upon use and occupancy, and this court held (Mr. Justice Clarke writing the opinion) "that the defendant was required, through plaintiff, to take out insurance at least to the amount of $20,000, and, if the market value was in excess of said sum, to the amount of said market value." Following that decision, the judgment of the trial court, in dismissing the plaintiff's complaint in the case at bar upon the ground that it was optional with the defendants to determine whether or not insurance upon use and occupancy was required by them, was error. Clearly, under the agreed statement of facts, the defendants being bound by their contract to insure against loss of "use and occupancy" to the amount of the market value thereof, and having failed to take any insurance therefor, there was a breach of the contract on their part, and the plaintiff was entitled to recover at least nominal damages.

The right of the plaintiff to recover more than nominal damages depends upon whether or not the plaintiff has shown what the market value of "use and occupancy" of the defendants' premises was during the period covered by the contract. The ninth paragraph in the agreed statement, is as follows:

"That the general scope, policy, and design of the defendants' business have during the entire term covered by said contract, and now are, to manufacture and sell during such fiscal year ending September 30th clothing to the amount of approximately $300,000, at a gross profit of approximately $75,000, and at a total expense of approximately $28,000. That of this contemplated expense the sum of $5,000 is a fixed annual expense of defendants' business;

being the balance agreed to be paid to two salesmen of defendants, under
contracts of employment with said salesmen for a period of one year from
the beginning of each fiscal year. That the estimate of the annual expenses
of defendants' business, save as to the $5,000 aforesaid, is dependent upon
the continuance of said business for the entire fiscal year, as all expenses
over and above said $5,000 are of such a nature as would cease with the
cessation of defendants' business."

Then follows a statement of the amount of business done by the de-
fendants for the years ending September 30, 1899 and 1900, and the
gross profits and expenses each year, from which the sum represent-
ing the net profits made by them during those years, respectively,
can be easily calculated. It is these profits and fixed charges each
year that the defendants would have lost, had their business been
interrupted during the years aforesaid, and these alone, that the
plaintiff assumes to be the market value of use and occupancy, and,
to cover this possible loss, the plaintiff claims that the defendants
should have taken insurance, or, in other words, the plaintiff claims
that the aggregate amount of the net profits of the defendants' busi-
ness during the years covered by the contract, plus the fixed charges
aforesaid, is the sum for which defendants were obligated in their
contract to insure, as the market value of the use and occupancy of
their premises.

It was held, however, in the Freundlich Case, following Michael v.
Prussian Nat. Ins. Co., 171 N. Y. 25, 63 N. E. 810, that "profits of a
business is quite another insurance risk, and not at all covered by
the phrase 'use and occupancy.'" This decision effectually elimi-
nates "profits" of a business, as fixing the market value of premises
used for business purposes, or even forming any basis for calculating
such value. Nor, in the case at bar, do the fixed charges mentioned
in the statement of facts constitute the market value of use and occu-
pancy. As stated in Michael v. Insurance Co., supra:

"Insurance 'on use and occupancy' evidently relates to the business use
which the property is capable of in its existing condition. If it is destroyed
by fire, and its use becomes impossible, then during the period required for its
reinstatement as property capable of use and occupation the owner is to be
compensated."

Although the defendants were compelled to pay for the salaries of
their two salesmen $5,000 each year, such charges have no relation
to the business use to which the premises of the defendants might
be put, nor to its availability for business purposes. If "profits" are
not covered by the term "use and occupancy," then surely fixed char-
ges of the character named herein are not covered thereby. Profits
of a business are always an uncertain element, and speculative to a
certain extent, and market values ought not to be fixed upon a basis
so doubtful and unreliable. It was said in Michael v. Insurance Co.,
supra, "that the defendant might have avoided all questions of con-
struction and have made plain the subject of its insurance, if it was
the business of the plaintiff, or its earnings and profits." So in the
case at bar the plaintiff could have (as he did in the Freundlich Case)
provided in the contract that the defendants take a named amount
upon "use and occupancy." In the absence of such a provision, it is
incumbent upon the plaintiff to show by definite and certain testi-

mony what the market value of the use and occupancy of the defendants' premiums was during the time covered by the contract, and what the character of the testimony shall be is for the plaintiff to elect, and the court to determine when presented.

Upon the question of the allowance of the defendants' counterclaim, we think they are not entitled to the return premiums based upon the contract rate. The plaintiff was authorized to obtain policies of insurance for the defendants; they agreeing to pay him a certain uniform rate, without regard to what he was required to pay. He procured the only form of policy provided by the laws of the state. The defendants, it must be assumed, knew what their policies would contain when they contracted with the plaintiff to procure them. They agreed to, and did, accept such policies. When the policies were obtained and delivered to the defendants by the plaintiff, his contract was fulfilled and his liability ceased. The defendants then assumed contractual relations with the insurance companies whose policies they held, and both parties were bound by the conditions contained therein. One condition was contained in the cancellation clause before referred to. Either party named in the policies had a right to avail itself of the privilege contained in said clause. The defendants could have protected themselves in their contract with the plaintiff by inserting therein that, in the event of any of the companies canceling their policies, the plaintiff should return to them the unearned premium, based upon the contract rate. This was not done. The defendants could therefore look only to the companies that canceled their policies for the amount of unearned premiums, calculated as provided for in the cancellation clause aforesaid. If these views are correct, the plaintiff in this action, upon the agreed statement of facts, should have had a judgment for six cents damages, and the defendants' counterclaim should have been denied. The judgment must therefore be modified by reversing the judgment in the court below, and ordering judgment in favor of the plaintiff for six cents damages, without costs to either party on this appeal.

Judgment modified by reversing the judgment of the court below, granting judgment absolute in favor of plaintiff for six cents damages, and, as modified, affirmed, without costs to either party upon this appeal, with leave to enter or both parties to appeal to the Appellate Division.

Judgment modified, and, as modified, affirmed, without costs. All concur.