## WILSON & TOOMER FERTILIZER CO. v. AUTOMOBILE INS. CO.,
### and ten other cases.

(District Court, S. D. Florida. August 30, 1922.)

1. **Insurance ⬠629(1)—Declaration in statutory form in action on policy held sufficient.**

   In action on fire policy, insuring use and occupancy of factory, a declaration in the form prescribed by Rev. Gen. St. Fla. 1920, § 2648, *held* sufficient as against demurrer.

2. **Courts ⬠334—Federal courts conform to rules of practice and pleadings of state courts.**

   Under Rev. St. § 914 (Comp. St. § 1537), the federal courts in actions at law must conform as near as may be to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in courts of record in the state within which such courts are held, any rule of the court to the contrary notwithstanding.

3. **Courts ⬠347—Declaration in form prescribed by state statute sufficient in federal court.**

   Generally, a declaration in the form prescribed by the statutes of the state within which the action is brought is sufficient as against demurrer.

4. **Insurance ⬠630—Declaration held sufficient as against contention that insurable interest was not pleaded.**

   In action on fire policy insuring the use and occupancy of a factory, declaration in the form prescribed by Rev. Gen. St. Fla. 1920, § 2648, alleging that the factory was destroyed by fire, and that damage and loss was thereby occasioned to the plaintiff "in such circumstances as to come within the promise and undertaking of such. policy, and to render liable and oblige the said defendant," *held* sufficient as against contention that there was no allegation of insurable interest.

5. **Insurance ⬠639—Plaintiff, suing on "use and occupancy" form of fire policy, not required to allege use and occupancy at time of fire.**

   In action on "use and occupancy" form of fire policy, the declaration was not required to allege that plaintiff was using and occupying the premises at the time of the fire, since, if plaintiff was not using and occupying premises, it was a matter of defense to be pleaded by the defendant.

6. **Insurance ⬠631—Declaration on use and occupancy policy held sufficient.**

   In action on policy insuring the use and occupancy of a factory, *held*, that there was no repugnancy between the allegations of the declaration and the policy attached.

7. **Pleading ⬠8(22)—Declaration held to plead insurer's breach of contract.**

   In action on "use and occupancy" form of fire policy, allegation that the insurer "has not paid or made good to said plaintiff the amount of said loss and damage aforesaid, or any part thereof, but refuses so to do," *held* to plead insurer's breach of contract; such allegation constituting the averment of an ultimate fact, and not merely a conclusion.

8. **Insurance ⬠635—Declaration on "use and occupancy" form of fire policy held to plead loss of profits.**

   In action on "use and occupancy" form of fire policy, declaration *held* to plead loss of net profits as the result of the fire.

⬠For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. **Insurance ⬤⇒634(1)—Waiver of condition and performance of all conditions precedent may be alleged in same count.**

In action on fire policy it was not improper to allege a waiver of a condition, and in the same count allege a performance of all conditions precedent, since, when a condition is waived, it is no longer a condition precedent.

10. **Insurance ⬤⇒561—Insurer's refusal to arbitrate, or its submission to partial arbitration, constituted waiver of notice of loss.**

Insurance company's refusal to arbitrate in accordance with the terms of the policy, or its submission to partial arbitration, constituted a waiver of notice of loss.

11. **Insurance ⬤⇒635—Declaration on "use and occupancy" form of fire policy held sufficient to show suspension of plaintiff's business.**

In action on "use and occupancy" form of fire policy, declaration *held* sufficient to show that there was a total or partial suspension of plaintiff's business in connection with the destruction by fire of the factory described in the policy.

12. **Constitutional law ⬤⇒248, 317—Insurance ⬤⇒602—Requiring fire insurance company to pay attorney's fees to insured held not violative of due process and equal protection clauses.**

Fire insurer's rights, under the due process and equal protection clauses of the Fourteenth Amendment to the Constitution, *held* not violated by requiring the company to pay attorney's fees to insured, who brings action on policy.

At Law. Action by the Wilson & Toomer Fertilizer Company against the Automobile Insurance Company, consolidated with ten other similar cases. On demurrers to declarations and motions to strike claim for attorney's fees from declarations. Demurrers overruled, and motions denied.

Milam & Milam, of Jacksonville, Fla., for plaintiff.

Spalding, MacDougald & Sibley and E. Marvin Underwood, all of Atlanta, Ga., and Kay, Adams & Ragland, of Jacksonville, Fla., for defendants.

CLAYTON, District Judge. The above 11 suits have, for present purposes, been consolidated, as the issues raised by the pleadings are the same in each case. Each action is upon a fire insurance policy, where the subject-matter of the insurance is the use and occupancy of a fertilizer plant. All of the policies are on standard form for fire insurance, and upon each there is pasted the commonly called "use and occupancy" form or agreement. Each policy covers the same property, and all combined are for the sum of $74,000. On October 4, 1920, the plaintiff's fertilizer plant was destroyed by fire. The insurance companies having declined to settle for the loss, these suits are brought.

The thing insured in each case is the continued right and privilege of using the factory in producing new goods for sale, and covered indemnity for fixed charges and expenses and accruing profits in case of loss or damage by fire. Thus the purpose of the contract was to keep the property of the insured in a condition of continued availability to the owner, as far as could be afforded by the pledge of indemnity—the uninterrupted use of the factory for the production and

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

sale of goods, whereby fixed charges and expenses were carried and the creation of a profit to the industry was insured; and in case of loss or destruction of the property, profits and legitimate continuing charges or expenses would be paid by the insurer.

The method of determining the value of the use and occupancy of the factory is fixed by this policy. As indicated, actual loss of net profits, fixed charges, and expenses necessarily continued were covered as the matter of indemnity. The policy makes the value of the use and occupancy dependent upon the profits, fixed charges, and expenses. It therefore appears that this use and occupancy insured covers a tangible, incorporeal right, irrespective of whether the subject of insurance is corporeal or incorporeal property. The language of the declaration is in consonance with the wording of the policy.

The first count of the declaration is in the exact wording prescribed by the statutes of Florida for suit upon a fire insurance policy. The same is true of the second count, which contains, however, an averment that notice was waived by the insurer, and that the assured requested an appraisal and arbitration, which was refused by the insurer. The third count employs substantially the same language as the first count, but alleges more in detail the elements that constitute the use and occupancy loss; that is to say, it not only recites that the insurance covers the use and occupancy of the plant as described in the policy attached to the declaration, but also avers the elements that enter into the valuation of the use and occupancy, and particularizes the loss in a detailed way. The third count also alleges a partial arbitration. The fourth count is very much the same as the third. However, it alleges a use and occupancy loss, not only on the building, but on the machinery and equipment and stock contained therein, while the first three counts seek recovery for the loss of the use and occupancy of the factory. The fourth count also sets out the matter of arbitration and the refusal of the insurance company to pay according to the arbitration.

Attached to the declaration is a copy of the policy sued upon, and also a bill of particulars which shows as to each count the number of days of suspension of business resulting from the fire, the average daily production of the plant at the time of the fire, the net profit per ton of the manufactured goods at the time of the destruction, etc.

There are 25 assigned grounds of demurrer to the declaration. Some of them are general, some may be plausible, and others, in my opinion, are rather meticulous. The demurrer, it seems to me, can be reduced to an objection against the brevity of the prescribed statutory form of declaration, or to an objection that the brief form of declaration, which alleges only ultimate facts, should also allege the various detailed items that are properly set out in the bill of particulars attached to the declaration and made a part thereof.

[1] Section 2648, Rev. Gen. Stats. of Florida, provides that—

*"Forms of Declaration.*—The following forms shall be sufficient in the statement of the declaration of the respective causes of action therein set forth. They and like forms may be used with such modifications as may be necessary to meet the facts of the case; but nothing herein contained shall

render it erroneous or irregular to depart from the letter of such forms, so long as the substance is expressed without prolixity."

Then follow 22 prescribed forms of declarations; the last being a fire insurance policy, which is the one adopted by the plaintiff. This act was passed in 1901 (chapter 4935). The original act is entitled "An act to prescribe a form of declaration in a suit on a fire insurance policy." It will be observed that by this act this form is not limited to fire insurance policies on buildings alone, but such form may cover a vessel, an automobile, or any kind of personal property, or rents, or royalties, or any subject-matter of indemnity. The statute expressly declares that this form shall be sufficient. Practically all of the grounds of demurrer urge insufficiency of the statutory form. For instance, grounds 2 and 3 of the demurrer object to the plaintiff's having failed to aver an insurable interest in the property in the matter desired by the defendant; 4, that no breach by the defendant is shown; 6, that the breach is alleged in the form of a mere conclusion; 8, that there is no averment of an ownership at the time of the loss; 9, that there is no allegation as to the property being used at the time of the fire; 10, 11, and 12, and others, urge fault against the allegations of the value of the property destroyed at the time of the fire, etc. All grounds attack the declaration because of its failure to allege certain matters not required by the statute.

[2] Of course, the federal courts in an action at law must conform as near as may be to the practice, pleadings, and forms and modes of proceeding existing at the time in like causes in courts of record in the state within which such courts are held, any rule of court to the contrary notwithstanding. Rev. Stats. § 914 (Comp. St. § 1537). Therefore I am constrained to approve the procedure and practice which would be pursued in the state court of record in a cause like this. Of course it is familiar that there are numerous adjudged cases where the federal court could not for manifest good reason follow the state practice and procedure, and therefore declined to do so, but the conformity statute must be followed wherever practicable and proper in the administration of justice. The leading cases on the Conformity Act (Rev. Stat. § 914 [Comp. St. § 1537]), are collated in Spokane, etc., R. Co. v. Campbell, 241 U. S. 497, 502, 503, 36 Sup. Ct. 683, 60 L. Ed. 1125.

In Sears v. Eastburn, 10 How. (51 U. S.) 187, 13 L. Ed. 381, it was held that where the state of Alabama passed an act abolishing fictitious proceedings in ejectments, and to substitute in their place the action of trespass for the purpose of trying the title to lands and recovering their possession, the federal court should have conformed to the mode of proceeding prescribed by the state law. In Lowndes v. Huntington, 153 U. S. 1, 14 Sup. Ct. 758, 38 L. Ed. 615, it was held that the settled rule of decision in the courts of the state is controlling as to the form of the action, the title of the plaintiff to submerged lands, and the special defenses of the defendant. In Glenn v. Sumner, 132 U. S. 153, 10 Sup. Ct. 41, 33 L. Ed. 301, a suit for the recovery of a money judgment, it was said that the sufficiency and scope of pleadings, and the form and effect of verdicts, in actions at

law, are matters in which the Circuit Courts (since the act of 1911 [Judicial Code, Act March 3, 1911, c. 231, 36 Stat. 1167, § 291, in effect January 1, 1912, being Comp. St. § 1268], and now, the District Courts) of the United States, are governed by the practice of the courts of the state in which they are held.

Other authorities are not necessary to support the proposition that this court ought to follow the state practice and procedure in this case, unless some good reason is shown to the contrary. I think an examination of the Florida statute and the practice thereunder discloses no reason to preclude this court from following the state procedure and practice.

[3] It is true generally that, when the state statute prescribes a form of declaration, it is sufficient, and it is not subject to demurrer. Stansell v. Corley, 81 Ga. 453, 8 S. E. 868; Brewing Co. v. McKittrick, 86 Mich. 191, 48 N. W. 1086; Pollock v. Stanton County, 57 Neb. 399, 77 N. W. 1081. In Shinloub v. Ammerman, 7 Ind. 348, it is said:

"The spirit of the Code of 1852 is that the party shall place upon the record, in the form of averments, the real facts of the case, eschewing all fictions and repetitions. Where a form given by the statute dispenses with an averment which would otherwise be material, the statute by declaring the form sufficient, stands in the place of the averment."

Moreover, the Supreme Court of Florida, in St. Petersburg, etc., v. Battle, 66 Fla. 303, 63 South. 445, held that the statutory form for declaration on promissory note is not subject to demurrer, and that the declaration being in the statutory form dispenses with the necessity of alleging in the declaration the omissions from the common-law form alluded to in the demurrer. In Florida there is but little distinction between the form of declaration for promissory note and the form of an insurance policy, so far as the question here involved is concerned. Both forms are prescribed by the identical statute, the enacting words hereinabove quoted. It is hardly to be doubted that the statutory form of declaration on a fire insurance policy is the proper procedure and practice in such case in a Florida court of record.

[4] Grounds 2 and 3 of the demurrer, to the effect that no sufficient insurable interest at the time of the issuance of the policy and at the time of the loss is averred in the declaration, it is sufficient to say that the statutory form renders such averment unnecessary. A case apposite here arose in Alabama upon a fire insurance policy, where the declaration was drawn in the form prescribed by the state statute. Demurrer was interposed because an insurable interest was not shown. The court said that—

"It cannot be questioned that, to maintain an action such as the present one, there must have been, when the policy was taken out and when the loss occurred, such ownership or right as amounts to an insurable interest and the plaintiff must show himself entitled to assert that interest. * * * Form 16, Code of 1876, p. 704, is framed for a suit on a policy of insurance. It contains no averment of property or insurable interest in the plaintiff. In section 2979 of the Code it is provided that 'any pleading which conforms substantially to the schedule of forms attached to this part is sufficient.' Form 16 is one of said forms. It must be inferred that the Legislature treated the averment that the policy was issued by the insurance company as equiva-

lent, prima facie, of an averment that the assured owned an insurable interest in the property. Each count in the complaint is sufficient, and the demurrer to it was rightly overruled." Com. F. Ins. Co. v. Capital City Ins. Co., 81 Ala. 320, 8 South. 222, 60 Am. Rep. 162.

The same rule was applied in a suit upon a life insurance policy in U. O. of Golden Cross v. Hooser, 160 Ala. 334, 49 South. 354.

The allegations in the statutory form of declaration show that the defendant insured the use and occupancy of plaintiff's fertilizer factory, and following the allegation of destruction by fire and that damage and loss was thereby occasioned to the plaintiff are the words that "in such circumstances as to come within the promise and undertaking of such policy and to render liable and oblige the said defendant," and then follows appropriate averments of the performance of conditions precedent and subsequent, in the wording of the statute, namely:

"Although all conditions have been performed and fulfilled and all events and things have existed and happened and all periods of time have elapsed to entitle the plaintiff to a performance by the defendant of said contract, and to entitle the said plaintiff to the said sum, and nothing has occurred to prevent the plaintiff from maintaining this action."

This is an averment of insurable interest. and complies with the statutory form. Commercial Fire Ins. Co. v. Capital City Ins. Co., 81 Ala. 320, 8 South. 222, 60 Am. Rep. 162; Travis v. Peabody Ins. Co., 28 W. Va. 583. This latter case specifically held that the language of the statute stands in place and instead of the averment of insurable interest that would otherwise be necessary to aver at the common law. The principle is supported in Tillis v. L. & L. & G. Ins. Co., 46 Fla. 268, 35 South. 171, 110 Am. St. Rep. 89.

[5] Now, going on, ground 9 of the demurrer is based upon the assignment that the declaration does not show that the plaintiff was using and occupying the alleged premises at the time of the alleged fire. It must be said that such allegation is unnecessary, because the breach of the condition subsequent forfeiting the policy is an affirmative matter of defense, and to be available must be pleaded by the defendant. After the policy had become a complete contract, it is not incumbent on the plaintiff to allege compliance with conditions. Noncompliance with such conditions is a matter of defense, to be specially pleaded. 2 Cooley, Briefs on Law of Ins. 1505; Bittinger v. Providence W. Ins. Co. (C. C.) 24 Fed. 549; Gunther v. L. & L. & G. Ins. Co. (C. C.) 85 Fed. 846; Bennett v. Md. F. Ins. Co., 3 Fed. Cas. 229, No. 1,321. And in Tillis v. L. & L. & G. Ins. Co., supra, the Supreme Court of Florida said that in declaring upon an insurance policy it is not necessary to allege performance of promissory warranties or conditions subsequent, but only of conditions precedent which may, under section 1045, R. S., be by general averment. Breaches of promissory warranties and conditions subsequent are matters of defense, to be pleaded by the defendant, and it is not necessary that the plaintiff anticipate such defenses, and negative them by averring performance in the declaration.

And the same court, in Woodmen v. Hodges, 72 Fla. 476, 73 South. 347, held these two matters considered, as to insurable interest, and as to the use of the premises at the time of the fire, are merely indicative of the invalidity of the demurrer on its many other grounds. The courts have consistently approved the sufficiency of the statutory form, whatever might be the omissions complained of by the demurrer, and such a policy is manifestly in accord with the legislative intent in enacting a short, definite form for declaring upon certain causes of action. So it appears that the plaintiff's declaration, conforming to the state statute and state practice, approved by the Supreme Court of Florida, holding that such form is not subject to demurrer, must be and is considered sufficient in this court.

[6] The fifth ground of demurrer raises the question as to what property or interest is insured. The defendant urges that there is a repugnancy between the allegations of the declaration and the statements in the policy attached as a part of the declaration, but this is not well taken, for each count of the declaration describes the property and interest insured in the exact words employed in the policy. The subject-matter of the insurance is described in the use and occupancy sheet pasted on the policy in these words:

"The use and occupancy of Wilson & Toomer Fertilizer Company's factory situated on Idealia Point, near Talleyrand avenue and St. Johns river, town of Jacksonville, state of Florida, and occupied for a fertilizer factory."

Obviously from the words quoted the insurance is not on the factory as a mere building solely, but on the use and occupancy of the factory. The property is thus described in each count of the declaration:

First count, "The following described property—on the use and occupancy of" the fertilizer plant described above; second, "on the use and occupancy of plaintiff's fertilizer factory (located and described as in policy), and on the net profits arising therefrom and fixed charges and expenses relating thereto;" third, "on the use and occupancy of Wilson & Toomer Fertilizer Company's factory (located and described as aforesaid) and occupied for a fertilizer plant, and thereby further promised," etc., setting out the clause relating to net profits, fixed charges, and expenses; and, fourth, the same description as in third.

Each count describes the subject-matter of insurance as the use and occupancy of the plaintiff's factory, and this is the identical wording of the policy. Three of the counts go further, and allege a promise on the part of the insurer to make good loss of profits and fixed charges and expense sustained by reason of the destruction of the factory by fire. These allegations are in addition to the general description of the property insured, namely, "use and occupancy" of the factory. A definition of the term "use and occupancy" will prescribe a method for determining the value of the use and occupancy of the factory.

This term "use and occupancy" was defined in Michael v. Prussian Nat. Ins. Co., 171 N. Y. 25, 63 N. E. 810, to be "the status of the property," and to relate to "its continued availability to the owner for any purpose he may be able to devote it to." Again, "insurance 'on use and occupancy' evidently relates to the business use which the property is capable of in its existing condition." On the question here

involved that case is very illuminating. The court there also considered the question as to whether or not a fixed value on the use and occupancy as a per diem value, as stated in the policy, would be disturbed and lessened, without any allegation of fraud, by allowing proof of the actual loss of profits. The question was decided in the negative, for the reason that, the parties having at the time of the issuance of the policy fixed a value on the use and occupancy, the insurer, unless some fraud is shown, could not after loss is sustained lessen its loss by giving a definition to the term "use and occupancy" not contemplated by the parties, at the time of making the contract. The reasoning throughout in that case is to the effect that, if the parties have made the value of the "use and occupancy" dependent upon profits and other elements of similar nature, such definition adopted by the parties will be applied by the court. In the Michael Case it was held that "Use and occupancy," as terms of insurance, may assume, within their general scope the expectation of profits and earnings derivable from property; But the terms appear to have a broader significance as to the subject of insurance, and to apply to the status of the property, and to its continued availability to the owner for any purpose he may be able to devote it to.

Here the rider pasted on the policy is designated a "use and occupancy form." By reading such slip, it is evident that the insurer bound itself to pay the insured "the actual loss sustained of net profits on the business which is thereby prevented and for such fixed charges and expenses as must necessarily continue during a total or partial suspension of business." Thus it is to be seen that the elements constituting the subject-matter of insurance are the actual loss sustained of net profits, fixed charges necessarily continuing, and expenses necessarily occurring during the period of suspension. These three things in the policy determine the value of the use and occupancy. Evidently this was the meaning put upon the term, for along in the policy this use and occupancy loss is limited to a per diem liability, providing for the daily accruing loss, whether the period of suspension be for one month or one year. "Use and occupancy" was the language chosen to express the benefit derived from using the property, in the way of determining profits and carrying fixed charges and expenses.

From all this it is to be seen that the contract of insurance covered the items of actual loss of net profits which the fire prevented being earned; also the fixed continuing charges and expenses occurring and the overhead expenses that occurred during the period of the suspension of business of the plaintiff. By critical examination of Tanenbaum v. Freundlich, 39 Misc. Rep. 819, 81 N. Y. Supp. 292, and Tanenbaum v. Simons, 40 Misc. Rep. 174, 81 N. Y. Supp. 655, they can be readily distinguished from the case now on trial. It is hardly necessary to here make the differentiation, for in those cases it seems that profits, fixed charges, and expenses were not considered, but in this case they are expressly stated to be the constituent elements that compose and make up the use and occupancy value of the policy.

As to the objection to the declaration that the policy was insurance

on incorporeal rights and insurance on a corporeal interest, it is unnecessary to consider this ground, further than to say that the declaration follows the wording of the policy in this respect, and whether it is corporeal or incorporeal is an immaterial matter. The thing insured in this case is the continued right and privilege of using the factory and producing new goods for sale, with the consequent carrying of fixed charges and expenses and the accruing of profits, the uninterrupted use of the factory for production and sale of goods whereby fixed charges and expenses were carried, and the creation of a profit to the industry remains as the tangible, incorporeal right to continue the work of production for the end of obtaining profits in payment of legitimate charges. And, as I have said, these things the policy covers.

[7] I think that what has been said in regard to the fourth ground of demurrer applies to the sixth as well. The breach of the defendant's contract to pay money is alleged in these words; that is:

"Yet the said defendant has not paid or made good to said plaintiff the amount of said loss and damage aforesaid or any part thereof, but refuses so to do."

This is not a mere conclusion, but is the averment of an ultimate fact. Moreover, if it be the "shorthand method" of pleading, the method is authorized by the statute.

[8] The seventh ground of demurrer is untenable for the reasons stated in reference to the fifth ground. The eighth is substantially the same as the second and third, and they have been dealt with. The tenth, eleventh, and twelfth may be considered together, for they object, in effect, that the declaration does not allege that the fire caused the loss of any net profit or fixed charges and expenses. It is manifest that the declaration does allege loss of net profits, for the first count, among other things, says:

"And damage and loss was thereby occasioned to said plaintiff to the amount of more than the face of the policy," etc.

The third and fourth counts specially allege the loss of profits, fixed charges, and expenses. It is mere supererogation to say that the policy, being made a part of the count, must be considered with it, when the statutory words employed state that the loss occurred under such circumstances as to render the defendant liable. From this it follows inevitably that it is a liability for net profits, etc., which is insured against by the policy. Besides, all these three grounds go to the question of the value of the use and occupancy. If the use and occupancy had no value, there would be no loss. It must be, therefore, that, as the allegations of the value of the property are dispensed with by the statutory form, it is not necessary to allege value. Again, the proper place for showing the details of the loss, the number of days of suspension, the per diem loss of profits, etc., caused by the fire, is in the bill of particulars, and there it is all to be found, attached to the declaration.

[9] The thirteenth ground charges repugnancy and inconsistency, for "that it alleges both a waiver of notice of loss and a performance

of all conditions required to be performed by the plaintiff." This objection is not applicable to the first and third counts, because they do not allege waiver of notice of loss, but is aimed at the second and fourth counts only. Whether or not it is improper to allege a waiver of a condition, and in the same count allege a performance of all conditions precedent, has been twice decided in Florida and once in Nebraska. Upon reason and principle, when a condition is waived, it is no longer a condition precedent, and there is nothing inconsistent in alleging a performance of all conditions precedent and at the same time alleging that one matter is no longer a condition precedent. In German Ins. Co. v. Shader, 68 Neb. 1, 93 N. W. 972, 60 L. R. A. 918, it is said that—

"In pleading performance of conditions precedent under section 128, Code Civ. Proc., a plaintiff may safely assume that conditions which have been waived will not be relied upon, and allegations of waiver to meet a defense based on such conditions are not inconsistent with the statutory allegation that all conditions on his part have been duly performed. * * * Hence it was entirely proper to set up the waiver in reply, and there would have been no departure from the cause of action set up in the petition, had this course been taken. * * * It could make no substantial difference if the plaintiff preferred to anticipate the defense and set up waiver in the petition. He did not change his cause of action by substituting allegations of waiver for the general denial."

The same proposition is involved when the waiver is alleged in a declaration, although it alleges the performance of all conditions precedent. The courts have repeatedly held that this does not constitute repugnancy in pleading. In Eagle Fire Co. v. Lewallen & Co., 56 Fla. 246, 47 South. 947, it is said that—

"The plaintiffs did not change their cause of action, or desert the ground occupied by them in the declaration, by substituting allegations of waiver for a general denial with respect to a defense of breach of these conditions in the policy. German Ins. Co. of Freeport, Ill. v. Shader, 68 Neb. 1, 93 N. W. Rep. 972; Ætna Life Insurance Co. v. Nexsen, 84 Ind. 347; Sweetser v. Odd Fellows' Mut. Aid Ass'n, 117 Ind. 97, 19 N. E. Rep. 722."

[10] The fourteenth ground is applicable to the second and fourth counts only. The others do not allege waiver. The fourth count alleges that the insurer was advised of the loss and waived further notice. This ground is without merit, because the averments of waiver of notice of loss allege an express waiver, and it is therefore unnecessary to set up facts showing an implied waiver. This conclusion seems to be borne out by the opinion in Sou. Home Ins. Co. v. Putnal, 57 Fla. 199, loc. cit. 231, 49 South. 922. But, whether or not this be true, the refusal to arbitrate by the insurance company, and this is alleged in the second count, constitutes a sufficient waiver of notice of loss. Moreover, the submission to partial arbitration charged in the fourth count is a sufficient allegation of fact showing waiver of notice of loss. It is a familiar principle that refusal to arbitrate according to the terms of the policy waives a performance of the condition of submitting proof of loss, and other conditions; and the refusal to arbitrate and partial arbitration is specifically alleged in the second and fourth counts, to which the fourteenth ground of demurrer is applicable. Furthermore, there is alleged in the statutory way the perform-

ance of all conditions precedent, such conditions not otherwise waived. In short, this ground cannot be maintained, for an express waiver is alleged, as well as the refusal to arbitrate and a partial arbitration, constituting sufficient allegation of waiver; and then the omnibus allegation of the performance of all conditions precedent, which, of course, includes those not waived.

[11] The fifteenth ground of demurrer is applicable to the second count only, for it urges that the count fails to show that there was a total or partial suspension of the business of the plaintiff in connection with the plant. The first count alleges that the property insured is fully described in the policy and was destroyed by fire. If the buildings were destroyed, a total loss was inevitable, for a total suspension must be inferred to have followed, therefore the production therein ceased; and, moreover, this is the statutory form for averring a total loss. The second count is substantially the same as the first. The third count alleges that the factory so destroyed was damaged by fire, so that there was necessitated a total suspension of business. The fourth count employs the same language as the third count; besides, the bill of particulars shows fully that the suspension was total, and that the total per diem liability is claimed, and the declaration and bill of particulars comply with the statutory requirement, and give the necessary information for the defendant to understand fully the cause of complaint.

Nothing need be said of the sixteenth ground of demurrer, except that it is in effect the same as the fifteenth, which has been considered. The seventeenth, eighteenth, nineteenth, twentieth, and twenty-first grounds of demurrer are considered together. They seem to have been prepared after a study of the bill of particulars. If the plaintiff had been examined in chief as a witness, and had testified to the facts stated in the bill of particulars, then doubtless the defendant would have had the right to more critically inquire about the matters urged in these grounds of demurrer. All these grounds go to the question of daily average production of the plant prior to the fire, the number of days of suspension, the commodity manufactured, the length of time to rebuild, and all of these items are set forth with necessary fullness in the bill of particulars. Furthermore, the statutory form does not require allegations as to the value of the insurable property, but simply the allegation that a loss was sustained to the amount of the policy so as to render the insurer liable. To incorporate all the minute details in the declaration that are sought to be brought in by the demurrer would make each count of the declaration long and cumbersome, and even then the defendant might absolutely refuse to understand plain language.

Further, in regard to the twentieth ground of demurrer, it may be added that each count of the declaration shows that the fertilizer factory was destroyed, and also the extent of the destruction, substantially according to the wording of the policy. It is not necessary for the plaintiff to show how many bricks, beams, cogwheels, and the like remained undamaged by the fire. That is a matter which perhaps may be gone into when the evidence is submitted on the trial of the case.

The twenty-second and twenty-third grounds are applicable to the last count of the declaration, for that is the only count that presents the question of raw materials and finished products. They are without just foundation, because the insurable allegation of the destruction and loss is drawn in the described statutory form, and further necessary information in this regard should be required in the bill of particulars, and not in the declaration. Again, the destruction was total, as alleged in that count—that a total suspension of business was necessitated—and whether it was all caused by the destruction of the building or of the machinery or the stock is immaterial.

What has been said wth reference to the seventeenth ground of demurrer is applicable to the twenty-fourth ground. In addition, it may be said the fact that the plaintiff had on hand other machinery or materials to enable it to continue business would be a matter of affirmative defense, to be pleaded by the defendant in the conduct of the case.

What has been said in consideration of the demurrer makes it unnecessary to say anything with more special regard to the motion for compulsory amendment of the declaration, to make it more specific as to whether there was a partial or total suspension of the operation of the plant; for I have endeavored to show that the declaration is sufficiently definite to fully acquaint the defendant with the essential particulars of the plaintiff's cause of complaint.

[12] There is also submitted a motion to strike the claim for attorney's fees from the declaration, for that it is alleged such claim is violative of the due process and the equal protection clause of the Fourteenth Amendment. It is familiar that a statute which directs that life and health insurance companies, in default of payment of their policies, shall pay reasonable attorney's fees, is not repugnant to the Constitution of the United States, and the reasons for the rule are stated in the adjudged cases. Orient Ins. Co. v. Daggs, 172 U. S. 557, 19 Sup. Ct. 281, 43 L. Ed. 552; Waters-Pierce Oil Co. v. Texas, 177 U. S. 28, 20 Sup. Ct. 518, 44 L. Ed. 657; N. Y. L. Ins. Co. v. Cravens, 178 U. S. 389, 20 Sup. Ct. 962, 44 L. Ed. 1116; Fidelity M. & L. Ass'n v. Mettler, 185 U. S. 308, 22 Sup. Ct. 662, 46 L. Ed. 922; Home L. Ins. Co. v. Fisher, 188 U. S. 726, 23 Sup. Ct. 380, 47 L. Ed. 667. In Un. T. Co. v. Turner Const. Co., 247 Fed. 727, 159 C. C. A. 585, 11 A. L. R. 880, the claim for attorney's fees was disapproved; and it was declared that the Florida statute providing lien for materialmen, etc., a remedy for the enforcement thereof, and that in case the plaintiff shall prevail there shall be allowed attorney's fees not exceeding $100 in any case, was open to every objection pointed out in the Ellis Case, without any of the merits indicated in the Cade Case. The former is G., C. & S. F. R. Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, where the Supreme Court said, in speaking of the statute under scrutiny, that—

"The act singles out a certain class of debtors, and punishes them when for like delinquencies it punishes no others. They are not treated as other debtors, or equally with other debtors. * * * They do not enter the courts upon equal terms. They must pay attorney's fees, if wrong; they do not recover any, if right; while their adversaries recover, if right, and pay

nothing, if wrong. * * * They do not stand equal before the law. They do not receive its equal protection."

The other case is styled M., K. & T. R. Co. v. Cade, 233 U. S. 642, 34 Sup. Ct. 678, 58 L. Ed. 1135. There the statute applies to claims "against any person or corporation doing business in this state, for personal services rendered or for labor done, or for material furnished, or for overcharges on freight or express," etc., and the statute allowed reasonable attorney's fees, not exceeding $20, when an attorney was actually employed; the amount to be determined by the court or jury. In the opinion it is said:

"Manifestly the purpose is merely to require the defendant to reimburse the plaintiff for a part of his expenses not otherwise recoverable as 'costs of suit.' So far as it goes, it imposes only compensatory damages upon a defendant who, in the judgment of the Legislature, unreasonably delays and resists payment of a just demand. The outlay for an attorney's fee is a necessary consequence of the litigation, and since it must fall upon one party or the other it is reasonable to impose it upon the party whose refusal to pay a just claim renders the litigation necessary."

Cases supporting the principle are cited, among others Farmers', etc., Ins. Co. v. Dobney, 189 U. S. 301, 304, 23 Sup. Ct. 565, 47 L. Ed. 821. The statute was held to be not repugnant either to the equal protection or due process clause of the Fourteenth Amendment. In the Turner Case it is observed, in speaking of attorney's fees, that—

"The question has not come directly before the Supreme Court of the United States, nor has it been passed on in any other federal court."

However, there are numerous cases annotated in 11 A. L. R. 884, where attorney's fees were allowed in actions brought under several different kinds of statutes, though none of them is a case involving the enforcement of the lien of a materialman or the like.

The Dobney Case, supra, seems to be decisive of the question of attorney's fees here—such fees having been provided for by the Florida statute in an action upon a fire insurance policy where default in payment has been made. The Nebraska statute (Dobney Case) provided that in a contract of insurance against loss by fire the amount of the insurance written in the policy shall be taken as a true value of the property and the true amount of loss and measure of damages, and that the court upon rendering judgment shall allow the plaintiff a reasonable sum as attorney's fees to be taxed as a part of the costs. In the opinion of the court it is said by Mr. Justice White that—

"All the grounds relied upon to demonstrate that the statute allowing a reasonable attorney's fee in case of the unsuccessful defense of a suit to enforce certain insurance policies is repugnant to the equality clause of the Fourteenth Amendment, are embraced in the following propositions: First, because it arbitrarily subjects insurance companies to a liability for attorney's fees when other defendants in other classes of cases are not subjected to such burden; second, because whilst the obligation to pay attorney's fee is imposed on insurance companies in the cases embraced by the statute, no such burden rests on the plaintiff in favor of the insurance companies where the suit on a policy is successfully defended; and, third, because the statute arbitrarily distinguishes between insurance policies by allowing an attorney's fee in case of a suit on a policy covering real estate, where the property has been totally destroyed, and excluding the right to such fees in suits to enforce policies on

other classes of property or where there has not been a total destruction of the property covered by the insurance. Each and all of these propositions must rest on the assumption that contracts of insurance, generically considered, do not possess such distinctive attributes as to justify their classification separate from other contracts, and that contracts of insurance as between themselves may not be classified separately depending upon the nature of the insurance, the character of the property covered, and the extent of the loss which may have supervened. But the unsoundness of these propositions is settled by the previous adjudications of this court. Orient Insurance Company v. Daggs, 172 U. S. 557; Insurance Company v. Warren, 181 U. S. 73; Insurance Company v. Mettler, 185 U. S. 308."

So it must be concluded that the attorney's fees claimed in each of the above-stated 11 cases must be allowed, and that the motion to strike such claim from the declaration will be denied.

Order will be entered in each case, overruling the demurrer and the motions.