## HOCKING GLASS CO. v. MILLER, Collector of Internal Revenue.

### No. 2906.

District Court, S. D. Ohio, E. D.
Aug. 22, 1933.

Covington, Burling & Rublee, of Washington, D. C., and J. W. Deffenbaugh, of Lancaster, Ohio, for plaintiff.

The United States Attorney, for defendant.

Findings of Fact and Conclusions of Law.

HOUGH, District Judge.

1. Plaintiff is now, and at all times hereinafter mentioned was, a corporation organized November 5, 1905, and existing under and by virtue of the laws of the state of

Ohio, having its office and place of business in the city of Lancaster, in the Southern District of Ohio, Eastern Division, and that it has been, was in 1924, and subsequent thereto, and now is, engaged in the business of manufacturing a general line of glassware.

2. The defendant herein is now, and since April 7, 1921, has been, the duly appointed, qualified, and acting collector of internal revenue of the United States for the Eleventh District of Ohio, in which collection district the plaintiff was required to make returns and pay taxes under the Internal Revenue Laws of the United States.

3. The defendant declined to refund $32,521.09 tax on April 26, 1929, on claim for refunder made in the regular way.

4. The tax had been paid, for the year 1924, in 1925, except a small portion that had been subsequently assessed and paid in 1928.

5. The tax was laid upon a fund of $260,168.70 received from several insurance companies in an amicable adjustment of loss and damage by reason of property destruction by fire, under the provisions of use and occupancy insurance policies.

6. Suit for recovery was brought in February of 1930.

7. Plaintiff, on Monday, March 16, 1925, filed with the collector of internal revenue for the Eleventh District of Ohio, at Columbus, its corporation income tax return for the calendar year 1924, showing thereon a tax liability of $52,253.56. Said tax was paid to the said defendant collector in quarterly installments on March 16, June 16, September 15, and December 15, 1925, at his office in Columbus, Ohio.

8. Thereafter the Commissioner of Internal Revenue (hereinafter called the Commissioner) caused an audit to be made of the plaintiff's 1924 income tax return and by "sixty-day" letter dated January 18, 1928, advised the plaintiff of a deficiency in taxes for the year 1924 in the sum of $374.52. Said additional tax was assessed by said Commissioner on the March, 1928, assessment list, and upon receipt of notice and demand, was paid on April 13, 1928, to said defendant as collector of internal revenue.

9. Prior to the year 1924, plaintiff insured, in the principal sum of $600,000, its automatic sprinkler equipped buildings of its factory plant, including its iron gas producer plant and partially sprinkler equipped office building, and all additions, extension, and attachments thereto and the contents of said buildings, with certain fire insurance companies. Said fire insurance policies were in full force and effect during the year 1924.

10. Prior to the year 1924, plaintiff also secured for a period of three years other policies of insurance in the principal sum of $525,000 on the use and occupancy of its automatic sprinkler equipped manufacturing buildings and machinery and equipment therein. Said "use and occupancy" insurance policies were in effect during the year 1924.

11. On March 6, 1924, fire destroyed substantially all of the plaintiff's automatic sprinkler equipped buildings, machinery, and equipment therein, including inventory and supplies and contents thereof which were theretofore used by the plaintiff in the operation of its business and thus destroyed and prevented the use and occupancy thereof by the plaintiff. Under said fire insurance and "use and occupancy" insurance policies plaintiff received during the year 1924:

(a) The sum of $471,520.11 as fire insurance on its physical buildings, machinery, and equipment, including inventory and supplies and contents thereof; and

(b) $260,168.78 as "use and occupancy" insurance representing the amount of loss sustained by it under said "use and occupancy" policies as a result of its inability to use and occupy the property destroyed by said fire.

12. Forthwith, after said fire, the plaintiff in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended said fire insurance proceeds of $471,520.11 and "use and occupancy" insurance proceeds of $260,168.78, or a total of $731,688.89, and more, in the acquisition of other property (i. e., new buildings, equipment, machinery, inventory, and supplies, and the use and occupancy thereof) similar or related in service or use to the property theretofore destroyed by said fire, which property had been thus converted into money as aforesaid.

13. The sum of $471,520.11, or any part thereof, representing the proceeds received by plaintiff under said ordinary fire insurance policies, has not been included in plaintiff's taxable income for the year 1924 and no tax has been paid on said sum or any part thereof. The sum of $260,168.78, representing the proceeds received by plaintiff under the "use and occupancy" insurance policies, was included in plaintiff's taxable income for the year 1924 and federal income taxes of $32,521.09 paid thereon.

14. On June 23, 1928, plaintiff filed with the Commissioner claim for the refund of

$32,521.09 of federal income taxes assessed against and collected from plaintiff for the calendar year 1924. Said claim for refund specifically stated that the sum claimed was refundable because under the provisions of section 203 (b) (5), Revenue Act of 1924 (43 Stat. 256, 26 USCA § 934 (b) (5), no gain or loss was recognized upon the receipt by plaintiff in 1924 of the sum of $260,168.78 the proceeds of use and occupancy insurance, said money resulting from the involuntary conversion of plaintiff's property and being forthwith in good faith expended in the acquisition of other property similar or related in service or use to the property so converted.

15. Plaintiff was advised by letter dated April 23, 1929, from C. B. Allen, Deputy Commissioner, that:

"From an examination of the evidence in your claim this office holds that the proceeds from a use and occupancy insurance policy constitute gross income and is taxable.

"Therefore your claim will be rejected, and the rejection will appear on a schedule to be approved by the Commissioner."

Thereafter, by letter dated April 26, 1929, plaintiff was advised that its said claim for the refund of $32,521.09, income tax for the calendar year 1924, was disallowed by the Commissioner on a schedule dated April 26, 1929.

The Internal Revenue Department, in refusing the tax refunder, took the position that the proceeds of the use and occupancy insurance was taxable income, because based upon the profits that would have been earned during the interruption. The contention then is that the proceeds of the several policies of insurance amicably adjusted by the parties to the insurance contracts and used in rebuilding the factory was not to be recognized "no gain or loss," under the provisions of section 203 (b) (5), Revenue Act of 1924. That section provides, in so far as applicable, as follows : "If property (as a result of its destruction in whole or in part * * *) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, * * * no gain or loss shall be recognized."

The government urges that the doctrine of estoppel is applicable here. From the facts presented, this contention is without merit. The evidence in the case nowhere presents a situation that would warrant a conclusion that the plaintiff unduly delayed or slept on its rights. The point further argued, that because the plaintiff company, in rebuilding and renewing its factory after the fire loss, created a much more modern plant, with a 25 per cent. greater capacity, although it was created for the conduct of the same business and the manufacture of the same output, is also without merit. The company only exercised good business judgment in re-creating its plant with modern construction and modern machinery, and in increasing the capacity to conform to past as well as probable future development. This did not change the character of the property, and it became "other property similar or related in service or use, to the property so converted."

Whether the insurance proceeds voluntarily paid because of the fire loss is nontaxable because of the provisions of the section just quoted, depends upon the legal construction of the use and occupancy contracts. In the first place, the right to the use and occupancy is property, or rather a property right. Whether it is to be classified as tangible or intangible, corporeal or uncorporeal, is perhaps not so important in this case. The conclusion that it is property, or a property right, cannot be gainsaid, in view of the manifest intention of the contracting parties. Without doubt, they so considered it. The contracts insure "against all direct loss or damage by fire * * *, on the use and occupancy of its" (property). The thing insured, then, is the use and occupancy, and it is insured against fire (which occurred), and against all direct loss or damage. The loss or damage is found by other provisions of the policy to be calculated and measured by the "net profits on the business, which is hereby prevented, and such fixed charges and expenses pertaining thereto as must necessarily continue during a total or partial suspension of the business, and such expenses as are necessarily incurred for the purpose of reducing the loss under this policy * * *." The loss or damage is the indemnity. The way in which that loss or damage is to be ascertained is pointed out in the contract. It is the method to be used in making an amicable adjustment in case of loss or damage, or if that amicable adjustment cannot or is not effected, and litigation ensues, those provisions direct the path and fix the bounds and limits for the reception of evidence to prove the loss or damage and fix the liability under the contracts. This character of insurance is in no sense profits in-

358

surance such as was before the courts in Insurance Co. of North America v. Canada Sugar Refining Co., Ltd. (C. C. A.) 87 F. 491, and O'Brien v. North River Insurance Co. (C. C. A.) 212 F. 102, L. R. A. 1917C, 722. These policies are very similar, if not identical, with policy which was before the District Court of Florida in Wilson & Toomer Fertilizer Co. v. Automobile Insurance Co. (D. C.) 283 F. 501. The court in that case, on page 502 of 283 F., says: "The thing insured in each case is the continued right and privilege of using the factory in producing new goods for sale, and covered indemnity for fixed charges and expenses and accruing profits in case of loss or damage by fire. Thus the purpose of the contract was to keep the property of the insured in a condition of continued availability to the owner— * * * the uninterrupted use of the factory for the production and sale of goods, * * * The method of determining the value of the use and occupancy of the factory is fixed by this policy. As indicated, actual loss of net profits, fixed charges, and expenses necessarily incurred, were covered as the matter of indemnity. The policy makes the value of the use and occupancy dependent upon the profits, fixed charges, and expenses."

█ It must therefore be said that the use and occupancy was property within the meaning of section 203 (b) (5), Revenue Act of 1924, which being destroyed by fire was involuntarily converted into money, which in good faith, under prescribed regulations, was expended in the acquisition of other property, similar or related in service or use to the property so converted, and that the insured (the plaintiff in this case) realized no taxable gain. The taxes assessed in the sum of $32,521.09 were illegally assessed, and are recoverable in this case, with interest on the installment payments from the several dates paid, at the rate of 6 per cent., to and including June 30, 1932, and thereafter at the rate of 4 per cent. The plaintiff shall recover the costs.